# 25-1382-cv(L), 25-3155-cv(XAP)

# United States Court of Appeals

## for the

## Second Circuit

MISTY BLANCHETTE PORTER, M.D.,

*Plaintiff-Appellee-Cross-Appellant,*

– v. –

DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK
MEMORIAL HOSPITAL, DARTMOUTH-HITCHCOCK HEALTH,
DARTMOUTH-HITCHCOCK MEDICAL CENTER,

*Defendants-Appellants-Cross-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT (BURLINGTON)

## BRIEF FOR DEFENDANTS-APPELLANTS-CROSS-APPELLEES

DONALD W. SCHROEDER
MORGAN MCDONALD
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, Massachusetts 02199
(617) 342-4041
– and –
TRISTRAM J. COFFIN
DOWNS RACHLIN MARTIN PLLC
199 Main Street
P.O. Box 190, 6th Floor
Burlington, Vermont 05402
(802) 863-2375

*Attorneys for Defendants-Appellants-Cross-Appellees*

CP COUNSEL PRESS    (800) 4-APPEAL • (390775)

## CORPORATE DISCLOSURE STATEMENTS

## DISCLOSURE STATEMENT OF DARTMOUTH-HITCHCOCK MEDICAL CENTER

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Dartmouth-Hitchcock Medical Center states that it does not have a parent corporation, there is no publicly held corporation that owns ten percent or more of its stock, and it has no subsidiaries and no affiliate that has issued shares of ownership to the public.

## DISCLOSURE STATEMENT OF DARTMOUTH-HITCHCOCK CLINIC

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Dartmouth-Hitchcock Clinic ("DHC") identifies Dartmouth-Hitchcock Health, a nongovernmental corporation, as its parent corporation. DHC further states that there is no publicly held corporation that owns ten percent or more of DHC's stock, and that DHC has no subsidiaries and no affiliate that has issued shares of ownership to the public.

i

## DISCLOSURE STATEMENT OF MARY HITCHCOCK MEMORIAL HOSPITAL

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Mary Hitchcock Memorial Hospital ("MHMH") identifies Dartmouth-Hitchcock Health, a nongovernmental corporation, as its parent corporation. MHMH further states that there is no publicly held corporation that owns ten percent or more of MHMH's stock, and MHMH has no subsidiaries and no affiliate that has issued shares of ownership to the public.

## DISCLOSURE STATEMENT OF DARTMOUTH-HITCHCOCK HEALTH

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Dartmouth-Hitchcock Health, a nongovernmental corporation, states that it has no parent corporation, there is no publicly held corporation that owns ten percent or more of its stock, and it has no subsidiaries (except wholly owned subsidiaries) and no affiliate that has issued shares of ownership to the public.

Dated: March 19, 2026      /s/ *Donald W. Schroeder*
                                                  Donald W. Schroeder
                                                  Morgan McDonald
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel.: (617) 342-4041
Fax: (617) 342-4001

Tristram J. Coffin
DOWNS RACHLIN MARTIN PLLC
199 Main Street
P.O. Box 190, 6th Floor
Burlington, VT 05402
Tel.: (802) 863-2375

iii

# TABLE OF CONTENTS

*CORPORATE DISCLOSURE STATEMENTS* ...................................................*i*

*TABLE OF AUTHORITIES* ...........................................................................*vi*

*JURISDICTIONAL STATEMENT*....................................................................1

*STATEMENT OF THE ISSUES*.......................................................................2

*STATEMENT OF THE CASE* .........................................................................4

*SUMMARY OF ARGUMENT* ........................................................................16

*ARGUMENT*...............................................................................................19

    **I.   Standard of Review** ............................................................................**19**

      a.  The District Court's Jury Instructions Should be Reviewed De Novo. 19

      b.  The Court's Orders Regarding Evidentiary Issues Should Be Reviewed for Abuse of Discretion............................................................20

      c.  The District Court's Denials of Dartmouth Health's Post-Trial Motions Should be Reviewed for Abuse of Discretion. ...........................21

    **II.   The District Court's Jury Instructions as to VFEPA Causation Were Erroneous.............................................................................................21**

      a.  The Jury Was Improperly Instructed to Apply "Motivating Factor" Causation Rather than "But-For" Causation. ...........................................21

      b.  If the Court Finds There is No Authoritative Answer as to the Appropriate Causation Standard, it Should Certify the Question to the Vermont Supreme Court.................................................................................39

      c.  Even if Motivating Factor Causation Applies, the Instruction Was Still Erroneous.........................................................................................42

    **III.  The District Court Repeatedly Erred in its Evidentiary and Post-Trial Rulings Related to Damages. ................................................................49**

a. The District Court Improperly Allowed Testimony and Demonstrative Evidence Derived from Dr. Porter's Untimely Expert Report..........................................................................................49

b. The District Court Improperly Excluded Defense Exhibit C-19 and Barred Its Use in Closing..........................................................................57

c. The District Court Erred in Denying a New Trial on Damages.......60

IV. CONCLUSION ......................................................................................63

CERTIFICATE OF COMPLIANCE.................................................................65

# TABLE OF AUTHORITIES

**Cases**

*Ashley v. City of New York*, 992 F.3d 128 (2d Cir. 2021) ................. 19, 20, 29, 44

*Cameron v. City of New York*, 598 F.3d 40 (2d Cir. 2010) ....................................21

*Carter v. TD Bank, N.A.*, No. 23-950, 2024 WL 2828470 (2d Cir. June 4, 2024) ................................................................................................................................30

*Chauca v. Abraham*, 885 F.3d 122 (2d Cir. 2018) ....................................................40

*Connors v. Dartmouth Hitchcock Med. Ctr.*, No. 2:10-CV-94, 2013 WL 12221853 (D. Vt. Nov. 18, 2013) ........................................................................54

*Daiello v. Town of Vernon*, 217 Vt. 1 (2022) ..........................................................35

*DiBella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005) ....................................................39

*Dunlap–McCuller v. Riese Organization*, 980 F.2d 153 (2d Cir. 1992) .............21

*Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529 (2d Cir. 1991) ..................39

*Funk v. Belneftekhim*, 861 F.3d 354 (2d Cir. 2017) ................................................55

*Gallipo v. City of Rutland*, 163 Vt. 83 (1994) .................................................. 24, 47

*Gates v. Mack Molding Co., Inc.*, 216 Vt. 379 (2022) ............................... 24, 27, 31

*Hammond v. Univ. of Vt. Med. Ctr.*, 218 Vt. 250 (2023) 23, 29, 32, 33, 34, 35, 36, 37

*Hathaway v. Coughlin*, 99 F.3d 550 (2d Cir. 1996) ................................................20

*Hodgdon v. Mt. Mansfield Co., Inc.*, 160 Vt. 150 (1992) .............. 25, 27, 33, 34, 47

*In re Miller*, 219 Vt. 380 (2024) ..................................................................................23

*India.Com, Inc. v. Dalai*, 412 F.3d 315 (2d Cir. 2005) ................................... 21, 22

*Kelly v. Univ. of Vt. Med. Ctr.*, 215 Vt. 445 (2022) ................................................23

*Kennedy v. Dep't of Pub. Safety*, 168 Vt. 601 (1998) ..................................... 25, 31

*King v. United States*, 694 F. Supp. 2d 1020 (N.D. Iowa 2010) .........................46

*Kirk v. Raymark Industries*, 61 F.3d 147 (3d Cir 1995) ........................... 59, 60, 61

*Knapp v. State*, 168 Vt. 590 (1998) ............................................................. 43, 45, 48

*Lamay v. State*, 191 Vt. 635 (2012) ............................................................................46

*Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001) .............. 20, 45

*Long v. Fairbank Farms, Inc.*, No. 1:09-CV-592-GZS, 2011 WL 2516378 (D. Me. May 31, 2011) ................................................................................................ 59, 60

*Manley v. AmBase Corp.*, 337 F.3d 237 (2d Cir. 2003) .........................................21

*McAdams v. Town of Barnard*, 182 Vt. 259 (2007) ...............................................35

*McIsaac v. Univ. of Vt.*, 177 Vt. 16 (2004)...........................................................46

*Morritt v. Stryker Corp.*, No, 07-CV-2319 RRM RER, 2011 WL 3876960 (E.D.N.Y. 2011) .............................................................................................54

*Mueller v. Rutland Mental Health Servs.*, File No. 1:05-cv-38, 2006 WL 2585101 (D. Vt. Aug. 17, 2006) ...................................................... 25, 27

*Murray v. UBS Sec., LLC*, 128 F.4th 363 (2d Cir. 2025)............................... 19, 29

*Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019) . 29, 30, 31, 32, 33, 35, 40, 42

*Negron v. Cigna Health & Life Ins. Co.*, No. 3:16-cv-01702 (JAM), 2021 WL 2010788 (D. Conn. May 20, 2021)...................................................................55

*Newton v. Kohl's, Inc.*, No. 5:21-CV-268, 2024 WL 4986303 (D. Vt. Nov. 12, 2024) ..........................................................................................................26

*ONTI, Inc. v. Integra Bank*, No. CIV. A. 14514, 1998 WL 671263 (Del. Ch. Aug. 25, 1998) .......................................................................................59

*Paolillo v. Dresser Industries, Inc.*, 865 F.2d 37 (2d Cir.), amended, 884 F.2d 707 (2d Cir. 1989)............................................................................. 19, 20

*Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) ...........................................55

*Payne v. Cornell Univ.*, No. 21-109-CV, 2022 WL 453441 (2d Cir. Feb. 15, 2022) ..........................................................................................................30

*Persons v. Lehoe*, 150 Vt. 582 (1988)...................................................................35

*Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129 (2d Cir. 2024) . 6, 8, 9, 29

*Porter v. Dartmouth-Hitchcock Med. Ctr.*, No. 5:17-cv-194, 2020 WL 6789564 (D. Vt. Nov. 3, 2020) .....................................................................................6, 7

*Rasanen v. Doe*, 723 F.3d 325 (2d Cir. 2013).................................................. 20, 44

*Robertson v. Mylan Laboratories, Inc.*, 176 Vt. 356 (2004) ............................ 23, 46

*RSD Leasing, Inc. v. Navistar Int'l Corp.*, 81 F.4th 153 (2d Cir. 2023) ....... 39, 41

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007) ............55

*Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161 (2d Cir. 2006) ..............................36

*Smith v. Fairbank Farms, Inc.*, No. 2:10-CV-60-GZS, 2011 WL 2669205 (D. Me. July 7, 2011)....................................................................................................60

*Softel, Inc. v. Dragon Med. And Scientific Communications, Inc.*, 118 F.3d 955 (2d Cir. 1997)..................................................................................................21

*State v. G.S. Blodgett Co.*, 163 Vt. 175 (1995) ..................................... 7, 25, 27, 31

*Telesford v. New York City Dep't of Educ.*, No. 21-227, 2023 WL 6366051 (2d Cir. Sept. 29, 2023)..................................................................................30

*Vail v. Vermont Agency of Transp.*, No. 2012-339, 2013 WL 2631328 (Vt. May 8, 2013) ...................................................................................... 24, 31

*Wolak v. Spucci*, 217 F.3d 157 (2d Cir. 2000) ......................................................21

**Statutes**

21 Vt. Stat. § 495(a)(1) .........................................................................................23

42 U.S.C. § 2000e-2(a).........................................................................................23

42 U.S.C. § 2000e-2(m) .......................................................................................32

42 U.S.C. § 2000e-5(g)(2)(B)(i).............................................................................48

42 U.S.C. § 2000e-5(g)(2)(B)(ii)............................................................................49

N.H. Stat. § 354-A:7 ..............................................................................................28

**Rules**

Fed. R. App. P. 32(a)(5)(A).................................................................................64

Fed. R. App. P. 32(a)(7)(B)(i)...............................................................................64

Fed. R. App. P. 32(g) .............................................................................................64

Fed. R. App. P. 32(g)(1) ........................................................................................64

Fed. R. Civ. P. 26(a)(2) ......................................................................................5, 6

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................ 50, 51, 52

Fed. R. Civ. P. 26(a)(2)(E) ......................................................................................6

Fed. R. Civ. P. 26(e)(2) ..........................................................................................54

Fed. R. Civ. P. 37(b)(2) ..........................................................................................53

Fed. R. Civ. P. 37(c)(1)...........................................................................................54

Fed. R. Civ. P. 51(d)(2)................................................................................... 20, 44

Fed. R. Civ. P. 59(e) ...............................................................................................39

Local Rule 32.1(a)(4)(A)..........................................................................................64

## JURISDICTIONAL STATEMENT

The court below had subject matter jurisdiction based on federal question pursuant to 28 U.S.C. § 1331 with respect to the claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the state law claims.

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. Judgment was entered post-trial on April 24, 2025, and an amended judgment was entered on December 2, 2025. Dartmouth Health filed a timely notice of appeal on May 27, 2025, and an amended notice of appeal on December 16, 2025. This appeal is from a final judgment that disposes of all claims in this action.

## STATEMENT OF THE ISSUES

1. Did the District Court err in instructing the jury that "motivating factor" causation, rather than "but for" causation, applied to Dr. Porter's claim for violation of the Vermont Fair Employment Practices Act ("VFEPA")?

2. If the District Court did not err in concluding that motivating factor causation applied to Dr. Porter's VFEPA claim, were its jury instructions on the VFEPA claim nevertheless erroneous?

3. Did the District Court err in denying Defendants' Motion to Alter or Amend the Judgment and, in the Alternative, for a New Trial on Dr. Porter's VFEPA Claim?

4. Should the District Court have certified the question of the appropriate causation standard for a disability-based VFEPA claim to the Vermont Supreme Court?

5. Did the District Court err in permitting Dr. Porter to elicit expert testimony regarding, and to display a demonstrative derived from, an untimely disclosed expert report?

6. Did the District Court err in excluding a document prepared by Dr. Porter's damages expert during cross-examination, and then in precluding Dartmouth Health from using it as a demonstrative exhibit during their closing summation?

7. Did the District Court err in denying Defendants' Motion for a New Trial Related to Damages Issues?

## STATEMENT OF THE CASE

Plaintiff-Appellee Misty Blanchette Porter ("Dr. Porter") was employed as a staff physician within Dartmouth Health's Reproductive Endocrinology and Infertility ("REI") Division. Following longstanding issues arising from recruitment and staffing shortages, a decrease in the reproductive-aged population, and a series of interpersonal conflicts, Dartmouth Health made the difficult decision to shut down the REI Division entirely, resulting in the termination of all three physicians employed therein.

In October of 2017, Dr. Porter filed a complaint in the United States District Court for the District of Vermont (the "District Court") against Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Dartmouth Health") alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"), N.H. RSA § 354-A:7, and N.H. RSA § 354-A:19, whistleblower retaliation in violation of the New Hampshire

4

Whistleblowers' Protection Act, N.H. RSA § 275-E:2, and wrongful discharge in violation of New Hampshire common law. (A-36—A-68). Dr. Porter subsequently filed an Amended Complaint in which she added a claim for disability discrimination under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. ("Rehabilitation Act"), as well as a claim for disability discrimination and retaliation under the Vermont Fair Employment Practices Act ("VFEPA"). (A-69—A-105). She sought, *inter alia*, "[a]n award of damages for any and all other monetary and non-monetary losses suffered by plaintiff in an amount to be determined at trial." (A-103—A-104).

Dr. Porter's claims were principally premised on the assertions that the termination of her employment was on account of (1) her development of a cerebral spinal fluid leak that caused her to take multiple leaves of absence and to require numerous workplace accommodations and (2) her reporting to Dartmouth Health conduct by other physicians in the REI division that she believed to be unlawful. (A-69—A-104).

Pursuant to Fed. R. Civ. P. 26(a)(2), Dr. Porter disclosed the expert report of Dr. Robert Bancroft on or about October 30, 2018 (the "2018

Bancroft Report"). (A-248—A-252). The 2018 Bancroft Report purported to analyze "Dr. Misty Blanchette Porter's lost earnings, due to the loss of her employment with Dartmouth-Hitchcock Medical Center (DHMC) in June 2017" and concluded that Dr. Porter had suffered $3,022,020.00 in total economic loss. *Id*. Pursuant to Fed. R. Civ. P. 26(a)(2)(E), Dr. Porter later disclosed a supplemental expert report from Dr. Bancroft dated October 1, 2019 (the "2019 Bancroft Report"), which concluded that Dr. Porter had suffered $4,835,551.00 in total economic loss. Counsel for Dartmouth Health deposed Dr. Bancroft on October 30, 2019. (A-262).

Dartmouth Health moved for summary judgment on January 29, 2020. (A-15). Concluding that no reasonable jury could find evidence of causation with respect to any of Dr. Porter's six claims, the District Court (Hon. Geoffrey W. Crawford) granted summary judgment in Dartmouth Health's favor on all six counts. *See Porter v. Dartmouth-Hitchcock Med. Ctr.*, No. 5:17-cv-194, 2020 WL 6789564 (D. Vt. Nov. 3, 2020), *aff'd in part, vacated in part, remanded,* 92 F.4th 129 (2d Cir. 2024). With respect to Dr. Porter's VFEPA claim, the District Court noted that "the [VFEPA] follows the language of the

6

Rehabilitation Act. The Vermont Supreme Court follows federal case law regarding 'the allocations of burdens and standards of proof.'" *Id*. at *11 (quoting *State v. G.S. Blodgett Co.,* 163 Vt. 175, 180 (1995)).

Judgment in favor of Dartmouth Health was entered on November 4, 2020. (A-16). Dr. Porter appealed the District Court's decision to this Court, asserting that the District Court had misapplied the summary judgment standard. (Brief and Special Appendix for Plaintiff-Appellant ("Porter Appeal Brief"), *Porter v. Dartmouth-Hitchcock Med. Ctr.,* No, 20-3894 (2d Cir. Mar. 8, 2021). In her briefing, Dr. Porter acknowledged the absence of any binding case law as to the appropriate causation standard for a disability-based VFEPA claim, and twice asked the Second Circuit to certify that question to the Vermont Supreme Court. *Id.* at 49 ("Plaintiff is not aware of any Vermont Supreme Court, published trial court order, or published administrative agency decision construing the impact of *Natofsky* on state-law disability discrimination claims. Because the lower court failed to analyze the issue, this Court may either remand for assessment by the District Court under the motivating-factor standard . . . or certify the

7

question to the Vermont Supreme Court."); *Id.* at 53 ("To the extent this Court concludes that Dr. Porter could meet a mixed-motive standard and not a but-for standard, . . . Dr. Porter requests certification of the state law claims to the . . . Vermont Supreme Court[], for determination of whether the state law claims apply a mixed-motive standard or a but-for standard for causation.").

On February 6, 2024, this Court affirmed the District Court's decision in part, vacated in part, and remanded the matter for trial. *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 169 (2d Cir. 2024). The Court recognized that the "Vermont statutes invoked by Dr. Porter in counts five and six of the Complaint are similar to the ADA and the Rehabilitation Act in prohibiting disability-based employment discrimination, and the district court dismissed all four disability discrimination counts for lack of proof of causation." *Id.* at 149. The Court declined Dr. Porter's request for certification of the causation standard question to the Vermont Supreme Court, and instead "l[eft] it to the district court on remand to reassess and

8

reconsider the causation standards governing Dr. Porter's disability claims under the relevant State laws." *Id.*

On April 2, 2024, the parties filed a joint consent to the assignment of this matter to Magistrate Judge Kevin J. Doyle. (A-18). Judge Crawford referred the case to Judge Doyle on April 16, 2024, and Judge Doyle presided over the remainder of the proceedings, including all decisions appealed from herein. (A-18—A-35). On June 17, 2024, the District Court set the matter for trial beginning on March 24, 2025. (A-18).

Dr. Bancroft issued a second supplemental report on August 26, 2024 (the "2024 Bancroft Report"). (A-290—A-295). The 2024 Bancroft Report asserted that Dr. Porter suffered $4,329,258.00 in total economic loss. *Id.* Dartmouth Health filed a motion *in limine* to preclude the testimony of Dr. Bancroft, and the District Court held a hearing on the motion on March 14, 2025. (A-22; A-234—A-295). At the hearing, Dr. Bancroft was examined regarding, *inter alia*, the 2024 Bancroft Report and, in particular, a chart he had prepared in conjunction therewith. (A-320—A-423).

Five days after the evidentiary hearing, and two business days before trial was scheduled to begin, Dr. Bancroft presented an entirely new report (the "2025 Bancroft Report"). (A-434—A-438). The 2025 Bancroft Report, the fourth iteration submitted in this lawsuit, attached a chart titled "Projected Lost Earnings for Dr. Misty Blanchette Porter" which estimated that Dr. Porter's total economic loss was $1,787,722.00. *Id.*

Dartmouth Health renewed its motion to preclude Dr. Bancroft from testifying on March 20, 2025. (A-424—A-438). In the renewed motion, Dartmouth Health asked the District Court to exclude Dr. Bancroft's testimony entirely because the manner in which his opinions were disclosed made it impossible for Dartmouth Health to respond to the ever-evolving expert analysis. *Id.* In the alternative, Dartmouth Health asked that Dr. Bancroft be precluded from referring to the chart attached to the 2025 Bancroft Report as substantive or demonstrative evidence, or that Dartmouth Health be permitted to retain its own expert economist to present an analysis of the comparative earnings and damages issues. *Id.* On March 21, 2025, the District Court denied both Dartmouth Health's original motion

10

*in limine* to preclude Dr. Bancroft's testimony as well as its renewed motion based on the 2025 Bancroft Report, thereby preventing Dartmouth Health from even presenting a rebuttal expert. (A-442—A-458).

This matter was tried before a jury between March 24, 2025, and April 10, 2025. (A-24—A-28). Dr. Bancroft testified on March 28, 2025, and March 31, 2025. (A-25—A-26). During Dr. Bancroft's direct examination, counsel for Dr. Porter used the "Projected Lost Earnings for Dr. Misty Blanchette Porter" summary chart from the 2025 Bancroft Report as demonstrative evidence. (A-556—A-557). Dr. Bancroft's testimony was the sole evidence presented by Dr. Porter in support of her purported economic damages.

Witness testimony concluded on April 4, 2025. (A-26—A-27). The District Court issued proposed jury instructions on the morning of April 7, 2025, and the parties appeared before the Court for a charge conference the same afternoon. (A-757—A-811). The District Court's proposed charge instructed the jury to apply "but-for" causation in connection with Dr. Porter's ADA, Rehabilitation Act, and New Hampshire disability discrimination claims, and "motivating factor" causation in connection with

11

Dr. Porter's claim for discriminatory termination under the VFEPA. (A-856—A-866). At the charge conference, counsel for Dartmouth Health objected to the District Court's proposed instruction as to the causation standard for Dr. Porter's VFEPA claim. (A-807). The District Court overruled Dartmouth Health's objection. (A-918—A-919).

Closing arguments were presented to the jury on April 8, 2025. (A-28). In her summation, counsel for Dr. Porter once again showed the jury the "Projected Lost Earnings for Dr. Misty Blanchette Porter" summary chart from the 2025 Bancroft Report, and reiterated that Dr. Bancroft had calculated Dr. Porter's economic losses as $1,787,722.00. (A-889).

The District Court then instructed the jury, in relevant part, as follows:

> Dr. Porter has brought claims for discriminatory termination, failure to make a reasonable accommodation, and retaliation under Vermont's FEPA. The elements and instructions for these claims are mostly the same as those under the ADA. However, there is one important difference in the claim for discriminatory termination. For the fourth element, the FEPA uses the "motivating factor" test instead of the "because of" test used under the ADA. In other words, Dr. Porter must prove the following by a preponderance of the evidence:

12

First:    Dartmouth Health is an employer subject to the FEPA.

Second:    Dr. Porter has a "disability" within the meaning of FEPA.

Third:    Dr. Porter was otherwise qualified to perform the essential functions of her job, either with or without a reasonable accommodation.

Under the motivating factor test, an employee must prove that their disability was a motivating factor that prompted the employer to terminate the employment.  It is not necessary for the employee to prove that disability was the sole or exclusive reason for the employer's decision.  A motivating factor is a factor that played some part in an employer's adverse employment action.  Under the motivating factor test, an employer cannot avoid liability by proving that it would still have taken the same adverse action in the absence of discriminatory motivation.    This is a difference between the motivating factor test and the "because of" test.
You should apply the motivating factor test, not the "because of" test, to Dr. Porter's claim for discriminatory termination under the FEPA.  With this exception, the instructions I previously gave you on disability discrimination under the ADA regarding failure to make a reasonable accommodation and retaliation apply equally to the claims under the FEPA.

(A-918—A-919).

13

The jury deliberated from April 8, 2025, to April 10, 2025. (A-28—A-29). On April 10, 2025, the jury reached a verdict in which it determined that Dartmouth Health was not liable to Dr. Porter under the New Hampshire Whistleblowers' Protection Act or the New Hampshire state law prohibiting wrongful discharge. (A-929—A-935). With respect to Dr. Porter's disability discrimination claims, the jury found that Dartmouth Health (1) did not violate the ADA, (2) did not violate the Rehabilitation Act, and (3) did not violate the New Hampshire Law Against Discrimination. *Id.* The jury did, however, find that "Dr. Porter's disability was a ***motivating factor*** in Dartmouth Health's decision to terminate Dr. Porter's employment in violation of the Vermont Fair Employment Practices Act." (A-931) (emphasis added). It awarded $1,125,000.00 in total damages in connection with that claim. (A-933).

The District Court entered judgment in favor of Dr. Porter in the amount of $1,125,000.00 on April 24, 2025. (A-1612). Dartmouth Health timely filed a notice of appeal on May 27, 2025. (A-1614—A-1615).

14

On May 22, 2025, the parties filed a series of post-trial motions, including (1) Defendants' Motion to Alter or Amend the Judgment and, in the Alternative, for a New Trial on Plaintiff's VFEPA Claim (A-1445—A-1458) and (2) Defendants' Motion for a New Trial Related to Damages Issues. (A-1468—A-1498). The parties appeared before the District Court for oral argument on the post-trial motions on July 1, 2025. (A-32—A-33). On November 26, 2025, the District Court denied both motions. (A-33). It entered an amended judgment in favor of Dr. Porter in the amount of $2,536,770.92 on December 2, 2025. (A-1713—A-1714). Dartmouth Health timely filed an amended notice of appeal on December 16, 2025. (A-1717—A-1719).

15

## SUMMARY OF ARGUMENT

The judgment entered in this matter cannot stand because the District Court repeatedly applied incorrect legal standards and committed prejudicial evidentiary errors that materially affected the outcome. First, the District Court erred in instructing the jury on the causation standard governing disability-based claims under the VFEPA. Vermont precedent makes clear that disability discrimination claims under the VFEPA follow the standards and burdens of proof applicable to the ADA and Rehabilitation Act—not Title VII—and therefore require proof of "but-for" causation. By instead instructing the jury to apply a "motivating factor" standard unique to Title VII, the District Court removed the critical element that led the jury to reject Dr. Porter's ADA, Rehabilitation Act, and New Hampshire disability discrimination claims. The District Court's instruction was not only legally incorrect but unfairly outcome-determinative, producing the lone verdict against Dartmouth Health on the VFEPA claim.

Second, even if "motivating factor" causation applied to a disability discrimination claim under the VFEPA, the District Court compounded its

16

error by instructing the jury that Dartmouth Health could not avoid liability by proving it would have made the same decision absent any discriminatory motive—even though Vermont law has long required a same-decision defense in mixed-motive cases. This instruction reversed established precedent, deprived Dartmouth Health of a complete defense, and conflicted directly with Vermont Supreme Court precedent.

Third, the District Court abused its discretion by allowing Dr. Bancroft to present a drastically revised, untimely damages opinion—issued only two business days before trial—and a demonstrative chart derived from that report, while simultaneously denying Dartmouth Health the opportunity to respond through its own expert. The late revisions introduced new assumptions, entirely new data, and a fundamentally different damages theory after the close of discovery, in violation of Rules 26 and 37 of the Federal Rules of Civil Procedure. Rather than enforcing the disclosure rules, the District Court excused the violations as "harmless," rewarding noncompliance and leaving Dartmouth Health to rebut an evolving damages theory solely through cross-examination.

17

Fourth, the District Court improperly excluded Exhibit C-19—Dr. Bancroft's own handwritten, in-court damages calculation—both as evidence and as a demonstrative during closing argument, even though the calculation was elicited on cross-examination, directly undermined Dr. Porter's damages model, and was originally permitted as substantive evidence. While permitting Dr. Porter to display her preferred demonstrative chart, the District Court barred Dartmouth Health from using the only visual aid supporting its central mitigation argument. This asymmetry distorted the evidentiary presentation and deprived the jury of a critical impeachment tool.

Collectively, these errors affected the core liability and damages determinations and deprived Dartmouth Health of a fair trial. The Court should reverse, direct entry of an amended judgment, or remand for a new trial limited to the VFEPA claim and/or damages.

## ARGUMENT

### I.     Standard of Review

*a. The District Court's Jury Instructions Should be Reviewed De Novo.*

Where the challenging party objects to a jury instruction at trial, the propriety of the instruction is reviewed *de novo*. *Murray v. UBS Sec., LLC*, 128 F.4th 363, 367–68 (2d Cir. 2025) (quoting *Ashley v. City of New York*, 992 F.3d 128, 142 (2d Cir. 2021)). A jury instruction is erroneous "if it misleads the jury as to the correct legal standard or does not adequately inform the jury of the law." *Id.* at 368 (quoting *Ashley*, 992 F.3d at 142).

In employment cases, the Second Circuit requires "jury instructions to be precise about the influence that a protected trait must produce and the level of abstraction at which the jury should assess whether that influence occurred." *Id.* at 370 (citing *Paolillo v. Dresser Industries, Inc.*, 865 F.2d 37, 40 (2d Cir.), amended, 884 F.2d 707 (2d Cir. 1989)). "[W]here jury instructions create an erroneous impression regarding the standard of liability, it is not harmless error because it goes directly to plaintiff's claim, and a new trial is

19

warranted." *Id*. at 372 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 554–55 (2d Cir. 1996)).

An objection to a jury instruction is valid "so long as it is clear that the trial judge was informed of possible errors in the charge and was given an opportunity to correct them." *Id*. at 369 (quoting *Ashley*, 992 F.3d at 142). Where a challenging party fails to object to an instruction, the instruction is reviewed for plain error as opposed to *de novo*. Fed. R. Civ. P. 51(d)(2); *Ashley*, 992 F.3d at 142; *Rasanen v. Doe,* 723 F.3d 325, 332 n.2 (2d Cir. 2013); *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001). "Plain error" is a less stringent standard than that of "fundamental error." *Rasanen,* 723 F.3d at 332 n.2 (internal citations omitted). A challenging party may establish plain error by demonstrating that a court's action "contravene[d] an established rule of law" and that the contravention went to the "very integrity" of the trial. *Id. at* 334; *Lavin-McEleney*, 239 F.3d at 483.

> b. *The Court's Orders Regarding Evidentiary Issues Should Be Reviewed for Abuse of Discretion.*

Evidentiary rulings, including regarding the exclusion of expert witness testimony on the basis of untimely disclosure, are reviewed for

20

abuse of discretion. *Cameron v. City of New York*, 598 F.3d 40, 61 (2d Cir. 2010) (quoting *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003)); *Wolak v. Spucci*, 217 F.3d 157, 161 (2d Cir. 2000) (no abuse of discretion in precluding testimony from late-disclosed expert witness) (citing *Softel, Inc. v. Dragon Med. And Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) and *Dunlap–McCuller v. Riese Organization*, 980 F.2d 153, 158 (2d Cir. 1992)).

> c. *The District Court's Denials of Dartmouth Health's Post-Trial Motions Should be Reviewed for Abuse of Discretion.*

A district court's ruling on a motion brought pursuant to Rule 59 of the Federal Rules of Civil Procedure is reviewed for abuse of discretion. *India.Com, Inc. v. Dalai*, 412 F.3d 315, 320 (2d Cir. 2005) (citations omitted). A court abuses its discretion in ruling on such a motion "when its decision is premised on errors of law." *Id.*

## II. The District Court's Jury Instructions as to VFEPA Causation Were Erroneous.

> a. *The Jury Was Improperly Instructed to Apply "Motivating Factor" Causation Rather than "But-For" Causation.*

In its charge to the jury, the District Court distinguished between the causation standard applicable to Dr. Porter's ADA, Rehabilitation Act, and

New Hampshire disability discrimination claims, on the one hand, and her claim for discriminatory termination under the VFEPA on the other. (A-907—A-919). As to all but Dr. Porter's VFEPA claim, the Court instructed the jury to apply "but for" causation. *Id*. However, as to Dr. Porter's claim under the VFEPA, the jury charge indicated that "motivating factor" causation should be applied. (A-918—A-919). Because disability discrimination claims under the VFEPA follow the burdens of proof applicable to federal ADA and Rehabilitation Act claims, the jury should have been instructed to apply "but for" causation as to each and every one of Dr. Porter's disability-based claims. The erroneous instruction was indisputably outcome-determinative, and Dartmouth Health is therefore entitled to an amended judgment or, in the alternative, a new trial limited to Dr. Porter's VFEPA claim.

i. The VFEPA Follows the Standards and Burdens of Proof Applicable to the ADA and Rehabilitation Act.

Pursuant to the VFEPA, an employer may not "discriminate against any individual because of race, color, religion, ancestry, national origin, sex, sexual orientation, gender identity, place of birth, crime victim status, or age

22

or against a <u>qualified individual with a disability</u>." 21 Vt. Stat. § 495(a)(1) (emphasis added). The Vermont Supreme Court has, on various occasions, noted that the standards and burdens of proof applicable to claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII") are also to be applied to claims brought under the VFEPA. *See, e.g., In re Miller*, 219 Vt. 380, 389–90 (2024) (race discrimination); *Robertson v. Mylan Laboratories, Inc.*, 176 Vt. 356, 363 (2004) (gender discrimination).

Title VII protects employees from discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). It does not prohibit discrimination on the basis of disability. And, to be clear, there is no Title VII claim in play here. Nonetheless, in certain instances, the Vermont Supreme Court has suggested that Title VII standards and burdens of proof should be extended to disability-based VFEPA claims. *See, e.g., Hammond v. Univ. of Vt. Med. Ctr.*, 218 Vt. 250, 259 (2023) (in race and disability discrimination case, noting that Title VII standards apply without distinguishing between protected classes); *Kelly v. Univ. of Vt. Med. Ctr.*, 215 Vt. 445, 452 (2022) (disability discrimination case in which causation was not

at issue); *Gallipo v. City of Rutland*, 163 Vt. 83, 89 (1994) (in disability and religious discrimination case, noting that Title VII standards apply without distinguishing between protected classes). Importantly, however, Vermont courts—including the Vermont Supreme Court as recently as 2022—have otherwise differentiated between disability-based VFEPA claims and claims involving other protected classes. In those instances, courts have explained that Rehabilitation Act and/or ADA standards and burdens of proof—rather than Title VII standards and burdens of proof—are applicable to disability-based VFEPA claims. *See, e.g.*, *Gates v. Mack Molding Co., Inc.*, 216 Vt. 379, 386 (2022) ("The disability-discrimination provisions under the FEPA are patterned after the federal Rehabilitation Act, which in turn incorporates standards from the federal Americans with Disabilities Act (ADA), so we look to federal case law to guide our interpretation, the allocations of burdens, and standards of proof."); *Vail v. Vermont Agency of Transp.*, No. 2012-339, 2013 WL 2631328, *5 (Vt. May 8, 2013) (non-precedential decision) ("Before addressing these arguments, we note that the standards applicable to both FEPA and the federal Rehabilitation Act are borrowed from the

24

Americans with Disabilities Act (ADA)."); *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995) ("The handicapped discrimination provisions under VFEPA are patterned after § 504 of the Rehabilitation Act of 1973 . . . Therefore, we look to federal case law to guide our interpretation, the allocations of burdens and standards of proof."); *Mueller v. Rutland Mental Health Servs.*, File No. 1:05-cv-38, 2006 WL 2585101, at *2 (D. Vt. Aug. 17, 2006) ("The standards and burdens of proof under the VFEPA are identical to those under the ADA.") (citation omitted); *see also Kennedy v. Dep't of Pub. Safety*, 168 Vt. 601, 601–02 (1998) ("Because the handicapped discrimination provisions of VFEPA are patterned on § 504 of the Rehabilitation Act . . . we look to interpretations of that statute in determining whether plaintiff has met the elements of his claim.") (citation omitted); *Hodgdon v. Mt. Mansfield Co., Inc.*, 160 Vt. 150, 165 ("The definition of 'handicapped individual' under FEPA is identical to the definition under the Federal Rehabilitation Act of 1973 . . . . Because the Vermont Legislature patterned our handicap-discrimination statute on federal legislation, we look to federal case law for guidance in construing the definitions at issue."); *Newton v. Kohl's, Inc.*, No.

5:21-CV-268, 2024 WL 4986303, at *13 (D. Vt. Nov. 12, 2024) ("Because FEPA's disability-discrimination provisions are patterned after the federal Rehabilitation Act, which in turn incorporates standards from the federal American with Disabilities Act (ADA), the court looks to both state and federal case law to guide its analysis.") (citation omitted).

Notwithstanding the abundance of case law in which Vermont courts, including the Vermont Supreme Court, have expressly stated that the disability provisions of the VFEPA are patterned off the ADA and Rehabilitation Act as opposed to Title VII, the District Court incorrectly stated in its order denying Dartmouth Health's request for post-trial relief that "the Vermont Supreme Court has repeatedly held and recently reiterated that the standards and burdens of proof to be applied under VFEPA are identical to those applied under Title VII of the Civil Rights Act of 1964." (A-1687). It then attempted to distinguish certain of the cases in which Vermont courts have expressly stated that ADA/Rehabilitation Act standards apply to disability-based VFEPA claims by noting that those decisions refer to failure-to-accommodate claims, which have "different

26

elements from the claim at issue in this case." (A-1691—A-1692). Not a single one of the decisions cited by the District Court limits its holding regarding the applicability of ADA/Rehabilitation Act standards to failure-to-accommodate cases. *Gates*, 216 Vt. at 386 ("The disability-discrimination provisions under the FEPA are patterned after the federal Rehabilitation Act . . ."); *G.S. Blodgett Co.*, 163 Vt. at 180 ("The handicapped discrimination provisions under VFEPA are patterned after § 504 of the Rehabilitation Act of 1973 . . . "); *Mueller*, No. 2006 WL 2585101, at *2 ("The standards and burdens of proof under the VFEPA are identical to those under the ADA."). Moreover, *Hodgdon v. Mt. Mansfield Co., Inc.* is not a failure-to-accommodate case, and the Vermont Supreme Court nevertheless suggested that ADA/Rehabilitation Act standards applied. *Hodgdon,* 160 Vt. at 165.

The District Court also noted that "Dartmouth Health [did] not cite[] any cases in which a state court applied 'but-for' causation to a disability discrimination claim brought under a unified statutory regime such as VFEPA." (A-1689). It failed to acknowledge that, in this very case, the District Court instructed the jury to apply "but-for" causation to a disability

discrimination claim brought under a unified statutory regime: the New Hampshire Law Against Discrimination. (A-907—A-918). As to that claim, the District Court instructed the jury as follows:

> Dr. Porter has brought claims for discriminatory termination, failure to make a reasonable accommodation, and retaliation under the New Hampshire Law Against Discrimination. The elements and instructions for these claims are the same as those under the ADA. Thus, the instructions I previously gave you on disability discrimination under the ADA apply equally to the claims under the New Hampshire Law Against Discrimination.

(A-918). The New Hampshire Law Against Discrimination, like the VFEPA, prohibits discrimination on the basis of a number of protected categories, including race, sex, religion, and disability, in a single statute. N.H. Stat. § 354-A:7. It does not contain any language regarding the applicable causation standard. *Id.* The District Court's suggestion that "[c]ourts in states with similar unified employment statutes, in the absence of statutory language providing the causation standard, have applied the 'motivating factor' standard to disability discrimination claims" is thus at odds with its own jury instructions. (A-1689).

28

Instead of relying on the numerous cases from the Vermont Supreme Court stating otherwise, the District Court instead rested its reasoning almost entirely on a single sentence from the Vermont Supreme Court's 2023 decision in *Hammond*, 218 Vt. 250. (A-1685—A-1696). This was error. *See* Section II(a)(iii), *infra*. The District Court's instruction overlooked decades of Vermont precedent, misleading the jury as to the correct legal standard and failing to adequately inform the jury of the law. *Murray*, 128 F.4th at 367–68 (quoting *Ashley*, 992 F.3d at 142). Dartmouth Health respectfully asks that this Court, reviewing the instruction *de novo,* find that Dartmouth Health is entitled to an amended judgment or, in the alternative, a new trial solely on Dr. Porter's VFEPA claim.

       ii.  <u>The ADA and Rehabilitation Act Follow But-For Causation.</u>

Subsequent to 2019, courts in the Second Circuit have utilized "but-for" causation in connection with claims alleging discrimination in violation of the ADA and Rehabilitation Act. *Natofsky v. City of New York*, 921 F.3d 337, 345–47 (2d Cir. 2019); *see also Porter,* 92 F.4th at 148 ("The 'on the basis of' language in the ADA imposes a 'but-for' standard of causation. And

29

because the Rehabilitation Act incorporates the ADA's causation standard for employment discrimination claims, such a claim under the Rehabilitation Act . . . also is governed by the but-for standard of causation.") (citation and internal marks omitted); *Carter v. TD Bank, N.A.*, No. 23-950, 2024 WL 2828470, at *4 (2d Cir. June 4, 2024) ("The plaintiff need not prove that discrimination was the employer's sole motivation, but discrimination must be a 'but-for cause' of the adverse employment action.") (citation omitted); *Telesford v. New York City Dep't of Educ.*, No. 21-227, 2023 WL 6366051, at *1 (2d Cir. Sept. 29, 2023) ("To prevail on an ADA discrimination claim, the plaintiff must show, among other things, that discrimination was the but-for cause of [the] adverse employment action.") (citation and internal marks omitted); *Payne v. Cornell Univ.*, No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022) (ADA requires "a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action.") (citation omitted).

In *Natofsky*, the Second Circuit held, as a matter of first impression, "that when a plaintiff alleges an employment discrimination claim under the

Rehabilitation Act, the causation standard that applies is the same one that would govern a complaint alleging employment discrimination under the ADA." *Natofsky*, 921 F.3d at 345. It further held that "the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was ***the but-for cause*** of any adverse employment action." *Id.* at 348 (emphasis added, citations omitted). Because the VFEPA's disability discrimination provisions are patterned off the ADA and Rehabilitation Act, and because Vermont courts have repeatedly stated that the standards and burdens of proof for VFEPA are guided by the same, the District Court should have instructed the jury on "but-for" rather than "motivating factor" causation. *See, e.g., Natofsky*, 921 F.3d at 345–48; *Gates*, 216 Vt. at 386; *Vail*, 2013 WL 2631328, at *5; *Kennedy*, 168 Vt. at 601–02; *G.S. Blodgett Co.*, 163 Vt. at 180.

It defies logical reasoning to assume that Vermont disability discrimination claims would continue to follow the standard for Title VII–which does not address the specific protected class at issue, i.e., disability, after *Natofsky*. This is particularly true given that Title VII—***unlike*** the ADA,

31

the Rehabilitation Act, and the VFEPA—states that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice . . . ." 42 U.S.C. § 2000e-2(m); *see also Natofsky*, 921 F.3d at 348 (noting that the ADA does not contain the "motivating factor" language). Accordingly, the Court should have instructed the jury as to "but-for" rather than "motivating factor" causation.

### iii. *Hammond* Does Not Control.

It is difficult to understate the significance of the Vermont Supreme Court's 2023 decision in *Hammond* to the District Court's order denying Dartmouth Health's motion for post-trial relief as to Dr. Porter's VFEPA claim. Cited ten (10) different times throughout the District Court's twelve (12) page decision, the District Court relied on *Hammond* for the propositions that:

> ▪ "[T]he standards and burdens of proof to be applied under VFEPA are identical to those applied under Title VII of the Civil Rights Act of 1964."
>
> ▪ "[T]he Vermont Supreme Court has consistently applied the 'motivating factor' test to

claims under VFEPA, including at least one disability discrimination claim."

- "[T]he Vermont Supreme Court recently had the opportunity in *Hammond* to apply 'but for' causation to a disability discrimination claim post-*Natofsky* and did not do so."

(A-1687; A-1688).

*Hammond* appears to be the sole Vermont Supreme Court decision post-dating *Natofsky* to consider whether an adverse employment action was causally connected to a plaintiff's disability. In *Hammond*, a case in which the plaintiff also brought a race discrimination and retaliation claim, the Vermont Supreme Court stated, without analysis, that "[t]he FEPA 'is patterned on Title VII of the Civil Rights Act of 1964, and the standards and burdens of proof under [the] FEPA are identical to those under Title VII.'" *Hammond*, 218 Vt. at 259 (quoting *Hodgdon,* 160 Vt. at 161). The *Hodgdon* decision referenced by the *Hammond* Court does include the referenced quote, but in connection with a sex discrimination claim rather than a disability discrimination claim. *Hodgdon*, 160 Vt. at 161 (citation omitted). Tellingly, the *Hodgdon* plaintiff also brought a disability

discrimination claim for which the Court suggested that Rehabilitation Act standards should apply. Indeed, the *Hodgdon* Court stated that "[t]he definition of 'handicapped individual' under FEPA is identical to the definition under the Federal Rehabilitation Act. . . . Moreover, the Rehabilitation Act is governed by regulations almost identical to the other definitions in § 495d of FEPA . . . . Because the Vermont Legislature patterned our handicap-discrimination statute on federal legislation, we look to federal case law for guidance in construing the definitions at issue." *Hodgdon,* 160 Vt. at 165. A review of the *Hodgdon* decision makes plain that the *Hammond* Court was simply reciting the oft-referenced fact that the VFEPA was originally patterned on Title VII–not intentionally seeking to undo decades of Vermont precedent regarding the applicability of ADA/Rehabilitation Act standards. *See Hammond*, 218 Vt. at 259; *Hodgdon*, 160 Vt. at 161.

Moreover, despite the District Court's reliance on *Hammond*, that case does not, in fact, consider whether motivating factor causation applies to a disability-based VFEPA claim. *See Hammond*, 218 Vt. at 264–65. Indeed, the

Vermont Supreme Court did not even have occasion to consider whether the more stringent "but-for" causation standard should be applied, as the employer in *Hammond* **actually asserted that Title VII standards applied to the plaintiff's disability discrimination claim**. Brief for Appellee, *Hammond v. Univ. of Vt. Med. Ctr.*, No. 22-AP-197, at \*22 (Vt. Jan. 6, 2023) ("The same burden-shifting framework that applies to Plaintiff's race discrimination claim also applies to their disability discrimination claim.") (citations omitted). There is no indication in *Hammond* that the Vermont Supreme Court was even aware of the Second Circuit's decision in *Natofsky*, and the Vermont Supreme Court has "consistently" held that it will not decide issues which have not been adequately briefed by the parties. *Persons v. Lehoe*, 150 Vt. 582, 587 (1988); *see also Daiello v. Town of Vernon*, 217 Vt. 1, 10 n.5 (2022) (declining to consider an issue "neither raised . . . in the proceedings below nor on appeal") (citation omitted); *McAdams v. Town of Barnard*, 182 Vt. 259, 263 (2007) ("Arguments not briefed are waived.") (citation omitted).

Further, despite the District Court's citation to *Hammond* in support of its contention that "the Vermont Supreme Court has consistently applied the

'motivating factor' test to claims under FEPA" (A-1687), there is no indication in the *Hammond* decision that the Vermont Supreme Court applied motivating factor causation. *See Hammond*, 218 Vt. at 265 ("This record is simply insufficient to create an inference that plaintiff's employment was terminated *because of* their disabilities.") (emphasis added).

Even more critically, the *Hammond* decision cites to **an ADA case** in laying out the elements of a disability-discrimination claim under the VFEPA. *Id.* at 264. As explained by the Vermont Supreme Court

> To establish a prima facie case of disability discrimination based on an adverse employment action, a plaintiff must show that: (1) they were an individual with a disability; (2) the employer was notified of their disability; (3) they were "otherwise qualified to perform the... job, with or without reasonable accommodations"; and (4) they "suffered [an] adverse employment action because of [their] disability."

*Id.* (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). The cited *Sista* decision concerns whether an employee's claim for employment discrimination under the ADA was properly dismissed. *Sista*, 445 F.3d at 169 ("To establish a prima facie case under the ADA . . . .") (emphasis added).

36

The District Court's statement that the *Hammond* Court "[drew] no distinction between the disability discrimination and race discrimination claims" is plainly incorrect.

The whole of the lower court's decision in this matter, then, appears to rest on the *Hammond* Court's passing reference to Title VII. Considering the larger body of Vermont Supreme Court precedent on VFEPA disability discrimination, this is an unreasonable reading of the law.

### iv. The Court's VFEPA Instructions Were Not Harmless Error.

The trial record is clear: each of Dr. Porter's four disability discrimination-based claims was premised on the exact same underlying set of facts. Indeed, the jury was instructed–without objection from Dr. Porter–that the instructions it was given on disability discrimination under the ADA "appl[ied] equally" to the Rehabilitation Act claim and to the claim for disability discrimination under New Hampshire state law. (A-917—A-918). With respect to Dr. Porter's VFEPA claim, the jury was instructed that "[t]he elements and instructions . . . are *mostly* the same as those under the ADA." (A-918) (emphasis added). Critically, however, the Court instructed the jury

over Dartmouth Health's objection that: "[T]here is **one** important difference in the claim for discriminatory termination. For the fourth element, the FEPA uses the 'motivating factor' test instead of the 'because of' test used under the ADA." (A-807; A-918) (emphasis added). The jury was thus instructed, in no uncertain terms, that the *only* difference between Dr. Porter's federal and New Hampshire disability discrimination claims and her VFEPA claim was the applicable causation standard. That the jury found in Dartmouth Health's favor on the federal and New Hampshire claims, and in Dr. Porter's favor on the VFEPA claim, speaks to the import of that instruction. Had the jury been informed of the correct causation standard (that is, "but-for" causation rather than "motivating factor" causation), Dartmouth Health would have rightfully prevailed on all six claims at trial and Dr. Porter would have been awarded no damages.

The District Court's instruction on the appropriate legal standard for a VFEPA violation was indisputably outcome-determinative. There is no basis in law or logic for an assertion that the jury would have found in favor of Dr. Porter had it been instructed as to the appropriate standard.

38

Accordingly, there is no need for a new trial, and alteration or amendment of the judgment is appropriate. *See* Fed. R. Civ. P. 59(e); *cf. Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1534–35 (2d Cir. 1991) (rejecting request for a directed verdict in lieu of new trial because a correctly instructed jury might have been persuaded otherwise).

> b. *If the Court Finds There is No Authoritative Answer as to the Appropriate Causation Standard, it Should Certify the Question to the Vermont Supreme Court.*

"If state law permits, the court may certify a question of state law to that state's highest court." 2d Cir. L.R. 27.2(a). "When asked to decide questions of state law, in the absence of authoritative law from the state's highest court, [the Court of Appeals] must either (1) predict how the state's highest court would resolve the state law question, or, if state law is so uncertain that [the Court of Appeals] can make no reasonable prediction, (2) certify the question to the state's highest court for a definitive resolution." *RSD Leasing, Inc. v. Navistar Int'l Corp.*, 81 F.4th 153, 169 (2d Cir. 2023), *certified question answered*, 219 Vt. 334 (2024) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)) (internal marks omitted); *see also*

39

*Chauca v. Abraham*, 885 F.3d 122, 124 (2d Cir. 2018) (holding, after post-trial certification of legal questions related to jury instructions and receipt of response from New York Court of Appeals, that the district court did not apply the proper standard and remanding for further proceedings). When considering whether to exercise its discretion to certify a question, this Court has traditionally considered "(1) whether a state court decision has ever provided an authoritative answer to the disputed issue; (2) the extent to which the question implicates the weighing of policy concerns of particular importance to the state; and (3) if the state court's answer may be determinative of the appeal." *Id.* at 170 (citation and internal marks omitted).

Both the District Court and Dr. Porter herself have acknowledged the absence of any binding case law as to the appropriate causation standard for a disability-based VFEPA claim after *Natofsky*. (Porter Appeal Brief at 49 ("[Dr. Porter] is not aware of any Vermont Supreme Court, published trial court order, or published administrative agency decision construing the impact of *Natofsky* on state-law disability discrimination claims."); (A-1696)

40

("Considering Vermont precedent on this issue, this Court *predicts* that the Vermont Supreme Court would apply the 'motivating factor' test to a disability discrimination claim under VFEPA.") (emphasis added).

Moreover, the question presented implicates policy considerations that are uniquely important to Vermont. Vermont has a "significant interest" in interpreting its own statutes. *RSD Leasing*, 81 F.4th at 170. Determining whether the statute requires a "but-for" or a "motivating factor" standard carries significant consequences for how disability discrimination claims are adjudicated in Vermont's courts and administered by state agencies. Certification is warranted to allow Vermont's highest court to speak definitively on an issue central to its regulatory scheme.

Finally, it is evident that the answer will be determinative of this appeal. As discussed herein, the jury found in Dartmouth Health's favor on Dr. Porter's ADA, Rehabilitation Act, and New Hampshire state disability discrimination claims. (A-929—A-932). Per the jury instructions, the only difference between those claims and Dr. Porter's VFEPA claim is whether "but-for" or "motivating factor" causation applied. (A-918—A-919).

41

Accordingly, if the Court determines there is an absence of authoritative law, it should certify the question of the appropriate causation standard to the Vermont Supreme Court.

      *c. Even if Motivating Factor Causation Applies, the Instruction Was Still Erroneous.*

        i. <u>The Jury Should Have Been Instructed that Dartmouth Health Could Avoid Liability by Proving That it Would Have Made the Same Decision Absent Any Discriminatory Motive.</u>

Even if "motivating factor" causation were the appropriate standard upon which to instruct the jury, post-trial relief for Dartmouth Health would still be warranted because the District Court's instruction also misstated the standard for motivating factor causation.

In a pre-*Natofsky* opinion considering a VFEPA claim of disability discrimination, the Vermont Supreme Court held that "the jury should have been instructed that if [employee] showed that her handicap was a motivating factor in [employer's] decision to terminate her employment, ***then [employer] had to prove that it would have made the same decision even absent the discriminatory motive***." *Knapp v. State*, 168 Vt. 590, 592

42

(1998) (reversing and remanding) (emphasis added). Here, the jury received no such instruction. To the contrary, the jury was instructed that "[u]nder the motivating factor test, ***an employer <u>cannot</u> avoid liability by proving that it would still have taken the same adverse action in the absence of discriminatory motivation.***" (A-919) (emphasis added). Thus, the jury in this matter was instructed exactly the opposite of what the Vermont Supreme Court has said is required of motivating factor causation.

In its order denying Dartmouth Health's motion for post-trial relief on Dr. Porter's VFEPA claim, the District Court found that Dartmouth Health had waived its right to move for reconsideration of the Court's jury instruction regarding the standard for liability associated with motivating factor causation because (1) it had failed to lodge any specific objection at trial and (2) Congress's 1991 amendments to Title VII abrogated the Vermont Supreme Court's 1998 decision in *Knapp*. (A-1692—A-1694). On this point, the District Court's decision is both legally erroneous and logically untenable.

ii. <u>Dartmouth Health's Objection to the Legal Standard Applicable to Motivating Factor Causation is Not Waived.</u>

43

As a threshold matter, Dartmouth Health did not, as the District Court suggested, waive its right to dispute the Court's jury instruction regarding the appropriate standard for motivating factor causation. "[N]o particular formality is required of [an] objection so long as it is clear that the trial judge was informed of possible errors in the charge and was given an opportunity to correct them." *Ashley*, 992 F.3d at 142 (citation omitted). At the charge conference, Dartmouth Health made a broad objection to the causation standard articulated by the Court in connection with Dr. Porter's VFEPA claim. (A-807). As such, its objection is preserved in full.

But even if Dartmouth Health was required to, and did not, object to a specific subset of the overall causation standard, this Court must simply review the issue for plain error as opposed to *de novo*. *See* Fed. R. Civ. P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights."); *Ashley*, 992 F.3d at 142 ("Where the challenging party failed to object to the charge at trial, we review the jury instructions for plain error[.]") (citation omitted); *Rasanen*, 723 F.3d at 333 n.2 (noting that "plain error" standard has replaced the more

44

egregious "fundamental error" standard previously applied for unpreserved objections to jury instructions); *Lavin-McEleney*, 239 F.3d at 482 ("Because plaintiff did not challenge the special verdict form below, we review for plain error.").

As discussed *supra*, the instruction given to the jury with respect to employer liability in connection with motivating factor causation stated exactly the opposite of an established rule of law and, as evidenced by the verdict, went to the very essence of this case. It is hard to imagine a clearer example of "plain error."

> iii. The District Court Ignored Clear and Unambiguous Vermont Law in Favor of Improper Reliance Upon Title VII.

The District Court also inexplicably found that, even if not waived, the Vermont Supreme Court's 1998 decision in *Knapp* was abrogated by 1991 congressional amendments to Title VII. As the District Court explained, "[in 1991] . . . Congress amended Title VII to overrule the portion of the *Price Waterhouse* burden-shifting framework upon which *Knapp* relied." (A-1693). Citing a 2010 decision from the Northern District of Iowa, the District Court

concluded that "[b]ecause the challenged jury instruction tracks the standards and burdens of proof established by Title VII, Dartmouth Health has not shown error warranting an amended judgment." (A-1693—A-1694) (citing *King v. United States*, 694 F. Supp. 2d 1020, 1023 (N.D. Iowa 2010)). Even if the District Court's interpretation of the congressional amendments to Title VII was correct (which, as discussed *infra*, it was not), it is illogical to assert that a standard articulated by the Vermont Supreme Court in 1998– and subsequently reaffirmed multiple times–was abrogated by events that occurred in 1991. Indeed, as recently as 2012, more than two full decades after the amendments upon which the District Court relied, the Vermont Supreme Court reaffirmed that: "[u]nder a mixed motive analysis, which is guided by *Price Waterhouse* . . . [o]nce the plaintiff shows that the decision was at least partially motivated by an illegitimate reason, ***the burden then shifts to the employer to show that the same decision would have been made even if the illegitimate reason had not been considered.*** *Lamay v. State*, 191 Vt. 635, 636 (2012) (quoting *McIsaac v. Univ. of Vt.*, 177 Vt. 16, 31 (2004)) (emphasis added); *Robertson*, 176 Vt. at 364 (reaffirming adoption of "both

the *Price Waterhouse* and the *McDonnell Douglas* frameworks" such that, in direct evidence cases, "the burden of persuasion . . . falls upon, and remains with, the employer to prove *'by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.'*") (emphasis added, internal citation omitted); *Gallipo*, 163 Vt. at 89 ("If plaintiff presents evidence that an impermissible factor played a motivating part in the employment decision, then the burden shifts to, and remains with, the employer, *who must show that it would have made the same decision even if it had not considered the impermissible factor.*") (emphasis added, citation omitted); *Hodgdon,* 160 Vt. at 161 (recognizing that *Price Waterhouse* was superseded by the Civil Rights Act of 1991 but nevertheless explaining that an employer "*may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed [the protected status] to play such a role*" and that "[t]he employer's burden under this framework is *no different from establishing an affirmative defense.*") (emphasis added, citation omitted). In effect, the District Court opted to ignore decades of Vermont precedent in favor of an

47

instruction of unknown origin, as supported by a 2010 decision from the Northern District of Iowa.

> iv. The District Court Misstated the Import of the 1991 Amendments to Title VII.

The District Court also misstated the import of the 1991 congressional amendments to Title VII. Contrary to the District Court's assertion, the 1991 amendments did not, in fact, "overrule the portion of the *Price Waterhouse* burden-shifting framework upon which *Knapp* relied." (A-1693). To the contrary, the 1991 revisions to Title VII only eliminated an employer's same-decision showing as an affirmative defense with respect to claims seeking equitable relief and/or attorney's fees. *See* 42 U.S.C. § 2000e-5(g)(2)(B)(i) (noting that, where a respondent demonstrates that it would have taken the same action in the absence of the impermissible motivating factor, the court may still grant "declaratory relief, injunctive relief . . . and attorney's fees and costs"). But the referenced amendments in fact ratified *Price Waterhouse's* interpretation of the burden-shifting framework with respect to claims for damages. Per the express terms of the statute, "[o]n a claim in which an individual proves a violation . . . and a respondent demonstrates

48

that the respondent would have taken the same action in the absence of the impermissible motivating factor, **the court . . . shall not award damages[.]"** 42 U.S.C. § 2000e-5(g)(2)(B)(ii) (emphasis added).

Of course, the jury in this matter was not asked to issue a declaratory judgment, award injunctive relief, or determine the issue of attorneys' fees. Its role was limited to determining liability and damages. (A-929—A-935). Thus, even if the Court were permitted to follow Title VII provisions contradicting Vermont Supreme Court precedent, *the instruction would still be incorrect.* The District Court's misstatement of the law constitutes plain error and warrants immediate redress by this Court.

### III. The District Court Repeatedly Erred in its Evidentiary and Post-Trial Rulings Related to Damages.

#### a. The District Court Improperly Allowed Testimony and Demonstrative Evidence Derived from Dr. Porter's Untimely Expert Report.

Setting aside the multiple reasons why the District Court's jury instructions on the VFEPA claim were improper, the District Court also committed reversible error by allowing Dr. Porter to present expert testimony and a demonstrative chart based on an untimely, prejudicial

49

supplemental report. The timing and contents of expert disclosures are governed by Rule 26 of the Federal Rules of Civil Procedure, which requires disclosure of "all opinions the witness will express and the basis and reasons for them", "the facts or data considered by the witness in forming them", and "any exhibits that will be used to summarize or support them[.]" Fed. R. Civ. P. 26(a)(2)(B).

In this case, discovery closed on December 15, 2019. Almost five years later, on August 26, 2024, Dr. Bancroft issued his third expert report, the 2024 Bancroft Report. (A-290—A-295). At an evidentiary hearing held just ten days before trial, Dr. Bancroft admitted that several key assumptions he had used in developing the 2024 Bancroft Report, if changed, could make his conclusions inaccurate. (A-320; A-327—A-363). He also admitted that he lacked factual information underpinning some of his assumptions and findings and that, depending what that information revealed, his conclusions could be different. *Id.* In particular, Dr. Bancroft admitted that (1) he had not considered Dr. Porter's most recent earnings data, including data for the year 2024; (2) he was unaware of a promotion to full professor

Dr. Porter had received in July of 2023; (3) he had not been informed of certain benefits Dr. Porter was receiving from her new employer; and (4) if Dr. Porter's earnings were higher as a result of her attaining the rank of professor or otherwise, his calculation of damages would be inaccurate. *Id.*

Evidence demonstrating Dr. Porter's 2024 earnings was produced by Dr. Porter on March 18, 2025, in the form of a W-2 from the University of Vermont Medical Center and the University of Vermont College of Medicine. (A-428—A-429). On March 19, 2025, a mere two business days before trial, Dr. Bancroft issued the 2025 Bancroft Report, which attempted to correct some of the shortcomings revealed at the evidentiary hearing. (A-434—A-438). The 2025 Bancroft Report made eight substantive changes to his previous analysis[1], largely drawn from information and testimony

---

[1] According to Dr. Bancroft, four of the changes were due to "new information" and four were due to "the passage of time." Dr. Bancroft specifically identified the following changes: "1. No DHMC salary increases for 2020 and 2021; 2. An additional UVM fringe benefit of $7,698 in 2019 (son's UVM tuition); 3. No loss of DHMC's medical insurance contributions beyond April 2018; 4. UVM's retirement contribution is equal to 9% of her income; 5. Dr. Porter's actual 2024 UVM earned income; 6. The assumption that Dr. Porter will go to a 75% part-time position on July 1, 2025; 7. An assumed settlement date of April 2025; and 8. The current interest rate on 5 year, tax-free, AAA municipal bonds."

elicited at the hearing, including information that Dartmouth Health had previously requested in discovery but Dr. Porter had failed to produce. (A-434—A-435). The 2025 Bancroft Report altered key assumptions about Dr. Porter's work life, including her anticipated career length and work allocation, both changes designed to inflate the damages figure. *Id.* Dartmouth Health objected to the evolving nature of the report and requested the opportunity to provide its own expert witness to rebut Dr. Bancroft's opinion. (A-424—A-432). The request was denied by the District Court, yet Dr. Bancroft was permitted both to testify and to present a demonstrative chart showing his revised calculation of Dr. Porter's total economic loss. (A-442—A-458). This, despite the fact that Dr. Bancroft's third report was completely eviscerated by Dartmouth Health during the evidentiary hearing leading up to the trial. (A-327—A-363).

On direct examination at trial, Dr. Bancroft was asked to describe his opinions regarding how he factored in certain pension information from a defined benefit pension plan Dr. Porter was making payments towards while employed at Dartmouth Health. (A-565—A-566). Dartmouth Health

52

objected, noting that the analysis was set forth neither in the body nor the charts attached to the 2025 Bancroft Report. (A-566—A-573). Dartmouth Heath further objected that the chart did not take into account the present value of the amount of benefit which Dr. Porter would obtain by getting life-long payments from her Dartmouth Health pension plan. (A-609—A-610). The District Court overruled each of Dartmouth Health's objections. (A-622—A-629). Dr. Bancroft's testimony was the sole evidence Dr. Porter presented at trial in support of her purported economic damages, and the summary chart was a key point in her attorney's closing summation.

Rule 37 of the Federal Rules of Civil Procedure states that, if a party fails to obey a discovery order, the court may issue orders including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]" Fed. R. Civ. P. 37(b)(2). Moreover, "[i]f a party fails to provide information . . . as required by Rule 26[(e)$^2$], the party is not allowed to use that

---

[2] "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any

information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Connors v. Dartmouth Hitchcock Med. Ctr.*, No. 2:10-CV-94, 2013 WL 12221853, at \*4 (D. Vt. Nov. 18, 2013) (supplemental Bancroft expert report excluded because it "was not timely" and there was "no reason to conclude that Plaintiff was substantially justified in the . . . failure to supplement her expert's report until the eve of trial."); *Morritt v. Stryker Corp.*, No, 07-CV-2319 RRM RER, 2011 WL 3876960, at \*6 (E.D.N.Y. 2011) (expert affidavit was "unquestionably designed to fill a significant and logical gap in his expert report" and was produced "only after defendants raised [the] deficiency in their motion . . . constitut[ing] a clear violation of Rule 26.") (citation omitted).

As explained by the District Court in its order denying Dartmouth Health's request for post-trial relief related to damages issues:

> The Second Circuit has identified a broad range of
> non-exclusive factors to consider when deciding

---

additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

whether to preclude evidence as a sanction for failure to disclose. *Negron v. Cigna Health & Life Ins. Co.*, No. 3:16-cv-01702 (JAM), 2021 WL 2010788, at *4 (D. Conn. May 20, 2021). In one case, the Second Circuit instructed courts to consider: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017). In another case, the non-exclusive factors included: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (4) the possibility of a continuance. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (citation modified). Any sanctions imposed under Rule 37 must be "just," and their severity must be "commensurate with the non-compliance." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007).

(A-1701—A-1702). Nearly all of these factors favored preclusion here: Dr.

Porter knew of and/or was in possession of the omitted information

(including her 2023 promotion and 2024 earnings) long before March 2025.

Dartmouth Health was denied even the lesser sanction of rebuttal testimony

from its own economic consultant. Dr. Porter offered no explanation for the

omission of the new information from Dr. Bancroft's earlier reports, and Dr. Bancroft's testimony (the sole evidence Dr. Porter presented in support of her purported economic loss) was critical to establishing damages. Dartmouth Health had less than a week to respond to the 2025 Bancroft Report before trial, and the District Court did not consider a continuance.

Permitting Dr. Porter to elicit untimely expert opinions and to display a late-disclosed demonstrative chart in closing argument, while barring Dartmouth Health from any such opportunities, was both inequitable and contrary to the rules of civil procedure and evidence. Dr. Porter was allowed to use a demonstrative exhibit that succinctly highlighted her "bottom-line" damages claim—nearly $1.8 million, presented as the opinion of an expert economist—to guide Dr. Bancroft's testimony and during closing argument. By contrast, Dartmouth Health was barred from presenting its own expert to explain its view of the evidence. (A-457—A-458).

In sum, Dr. Porter repeatedly revised her damages theory without justification, culminating in a drastic change just days before trial. The District Court's refusal to permit a defense expert to rebut these evolving

opinions left Dartmouth Health to counter them only through cross-examination, an inherently unfair and one-sided process.

> b. *The District Court Improperly Excluded Defense Exhibit C-19 and Barred Its Use in Closing.*

>> i. <u>Dr. Bancroft's In-Court Calculation Was Relevant and Admissible.</u>

On cross-examination at trial, counsel for Dartmouth Health asked Dr. Bancroft to calculate Dr. Porter's projected salary if she worked a 1.0 (i.e., full time) position at the University of Vermont Medical Center—the same assumption Dr. Bancroft had applied to Dr. Porter's work at Dartmouth Health. (A-720—A-723). At defense counsel's request, Dr. Bancroft performed the calculation by hand, which was marked for identification as Exhibit C-19. (A-720—A-723; A-733—A-735; A-1485). The figures showed that if the positions were treated equivalently, Dr. Porter's damages would be fully mitigated by 2025 or 2026. (A-720—A-723).

After originally permitting Exhibit C-19 as demonstrative evidence (A-754), the District Court reneged on its position (A-835–A-842), denying multiple requests by Dartmouth Health to move C-19 into evidence (A-749—

A-754) and prohibited its use as a demonstrative exhibit in closing arguments (A-835—A-842). This exclusion occurred despite Dr. Porter being permitted to present to the jury, both through Dr. Bancroft's testimony and again as a demonstrative exhibit in closing, her own late-disclosed chart from the 2025 Bancroft Report — a chart reflecting a substantial change in Dr. Bancroft's opinions on the eve of trial.

Allowing Dr. Porter to use the chart from the 2025 Bancroft Report in both testimony and closing, while denying Dartmouth Health the same opportunity with C-19 (after ruling that C-19, like the chart in the 2025 Bancroft Report, could be used as demonstrative evidence (A-754)), was inequitable, contrary to evidentiary rules, and highly prejudicial. C-19 was a statement made during trial, by Dr. Porter's own expert, in response to cross-examination — plainly relevant to rebutting Dr. Porter's damages theory. This was not hypothetical rebuttal; it was an admission by Dr. Porter's agent that undermined key elements of her damages case. Further, by introducing Dr. Bancroft's chart at trial and in closing, Dr. Porter opened the door to the defense's use of C-19.

ii. <u>The District Court's Reliance on *Kirk* was Misplaced.</u>

The District Court relied on *Kirk v. Raymark Industries*, 61 F.3d 147 (3d Cir 1995) to exclude C-19. (A-836—A-837). That reliance on *Kirk* was inapposite. In *Kirk*, the court was considering whether to admit the prior testimony of an out-of-court witness. The purported statement of a party opponent in that case was testimony from one of the parties' expert witnesses in a different case. *Kirk*, 51 F.3d at 162–64. Here, the statements and C-19 exhibit were made and prepared by the declarant, in-court, during the very trial at issue, while Dr. Bancroft was subject to cross-examination, and therefore subject to immediate challenge.

As such, the District Court's reliance on *Kirk* in excluding C-19 because Dr. Bancroft was not an agent of the party was improper. Not only was it a party admission by the party's agent, but it was also an in-court statement and was thus admissible. *See ONTI, Inc. v. Integra Bank*, No. CIV. A. 14514, 1998 WL 671263, at *3 (Del. Ch. Aug. 25, 1998) (distinguishing *Kirk*); *see also Long v. Fairbank Farms, Inc.*, No. 1:09-CV-592-GZS, 2011 WL 2516378, at *9–10, n.18 (D. Me. May 31, 2011), <u>*amended,*</u> No. 1:09-CV-592-GZS, 2011 WL

59

2490950 (D. Me. June 22, 2011), and *aff'd*, No. 1:09-CV-592-GZS, 2011 WL 2669199 (D. Me. July 7, 2011), and *aff'd sub nom.* *Smith v. Fairbank Farms, Inc.*, No. 2:10-CV-60-GZS, 2011 WL 2669205 (D. Me. July 7, 2011) (distinguishing *Kirk*).

Exhibit C-19 should have been admitted either as substantive evidence or, at a minimum, allowed as a demonstrative in closing. Its exclusion deprived Dartmouth Health of the opportunity to present its strongest rebuttal to Dr. Porter's inflated damages claim.

### c. The District Court Erred in Denying a New Trial on Damages.

After the verdict, Dartmouth Health moved for a new trial limited to damages, in the alternative to its motion to amend the judgment or for a new trial on Dr. Porter's VFEPA claim. (A-1468—A-1498). The District Court denied the motion, finding that the 2025 Bancroft Report was "a direct response to defense counsel's cross-examination of Dr. Bancroft at a hearing on Dartmouth Health's motion to exclude Dr. Bancroft from testifying as an expert witness at trial," that "Dartmouth Health plainly knew this information before Dr. Bancroft issued his March 19 report," and that Dr.

60

Bancroft had used the same methodology as in prior reports, changing only the inputs. (A-1700—A-1701). The District Court also concluded the disclosures were "substantially justified or harmless" under Rule 37. (A-1701).

The District Court's own opinion confirms the 2025 Bancroft Report corrected multiple omissions in the 2024 Bancroft Report by incorporating salary freezes at Dartmouth Health, a tuition credit benefit provided to Dr. Porter in connection with her new employment, and a changed FTE assumption. (A-1702). The District Court acknowledged some of this information was long known to Dr. Porter. *Id*. Yet, rather than permitting Dartmouth Health to rightfully mitigate the prejudice it suffered by presenting expert rebuttal, the District Court deemed the disclosures "substantially justified or harmless," even while certain of the Rule 37 factors (willfulness/reason and duration of noncompliance) were somehow "inconclusive." (A-1701—A-1702). That unconscionable application is an abuse of discretion: it disregards the central prejudice—trial by ambush.

Rather than analyze whether the late opinions impaired Dartmouth Health's ability to defend itself against an entirely new damages calculation, the District Court reasoned there was no prejudice because the 2025 Bancroft Report used the "same methodology" and produced "substantially lower damages", effectively rewarding Dr. Porter's non-compliance because her untimely expert report happened to reduce her purported damages. (A-1701; A-1704). But prejudice under Rule 37 turns on process fairness, not the bottom-line number. A shift in inputs on the eve of trial can be just as outcome-determinative, as it deprives the opposing party of the expert discovery to which it is entitled.

The District Court further concluded that exclusion of C-19 was justified on the ground it was not a "fair representation" of Dr. Bancroft's testimony, even while conceding the underlying math was elicited on cross with Dr. Bancroft, using figures he wrote down in real time. (A-1708—A-1709). That transforms Rule 403 of the Federal Rules of Evidence into a vehicle for withholding the defense's central impeachment aid. Any concern that Dr. Bancroft "protest[ed]" was fully addressable by allowing the exhibit

62

with a limiting instruction. (A-1709). The choice to keep the physical document from the jury—while telling Dartmouth Health it was "free" to argue the same testimony verbally—materially handicapped Dartmouth Health in a damages case that turned on numbers the jury needed to see, not merely hear. (A-1708).

The District Court's conclusions were incorrect and highly prejudicial. The exclusion of a defense rebuttal expert and refusal to admit C-19, combined with the untimely and unjustified supplementation of Dr. Porter's damages calculation, denied Dartmouth Health a fair trial.

## IV. CONCLUSION

Because the District Court's errors materially affected the outcome of the trial, the judgment cannot stand. Dartmouth Health respectfully asks this Court to reverse, direct entry of an amended judgment, or remand for a new trial on Plaintiff's VFEPA claim and/or limited to the issue of damages. In the alternative, Dartmouth Health asks the Court to certify the question of the appropriate causation standard to the Vermont Supreme Court.

Dated:  March 19, 2026

/s/ *Donald W. Schroeder*
Donald W. Schroeder
Morgan McDonald
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001


Tristram J. Coffin
DOWNS RACHLIN MARTIN
PLLC
199 Main Street
P.O. Box 190, 6th Floor
Burlington, VT 05402
Tel.: (802) 863-2375


*Attorneys for Defendants-Appellants*

64

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and Local Rule 32.1(a)(4)(A).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 11,641 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Palatino Linotype and complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A),

3. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of Microsoft Word in preparing this certificate.

Dated: March 19, 2026

*/s/ Donald W. Schroeder*
Donald W. Schroeder