# 25-1382-cv(L), 25-3155-cv(XAP)

## United States Court of Appeals
*for the*
## Second Circuit

MISTY BLANCHETTE PORTER, M.D.,

*Plaintiff-Appellee-Cross-Appellant,*

– v. –

DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, DARTMOUTH-HITCHCOCK HEALTH, DARTMOUTH-HITCHCOCK MEDICAL CENTER,

*Defendants-Appellants-Cross-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT (BURLINGTON)

# RESPONSE AND REPLY BRIEF FOR DEFENDANTS-APPELLANTS-CROSS-APPELLEES

DONALD W. SCHROEDER
MORGAN MCDONALD
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, Massachusetts 02199
(617) 342-4041
– and –
TRISTRAM J. COFFIN
DOWNS RACHLIN MARTIN PLLC
199 Main Street
P.O. Box 190, 6th Floor
Burlington, Vermont 05402
(802) 863-2375

*Attorneys for Defendants-Appellants-Cross-Appellees*

COUNSEL PRESS
A Proceed Service
The Appellate Experts
(800) 4-APPEAL • (395389)

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF THE ISSUES ........................................................................ 1

STATEMENT OF THE CASE ........................................................................ 3

SUMMARY OF ARGUMENT ........................................................................ 10

ARGUMENT ........................................................................ 14

I. Dartmouth Health's Challenges to the Jury Instructions are Neither Incorrect Nor Waived ........................................ 14

a. Dr. Porter's Substantive Arguments Fail to Address Dartmouth Health's Primary Points on Appeal ........................................ 14

i. The Court's "Motivating Factor" Instruction Was Erroneous ........................................ 14

ii. The Court's "Same-Decision" Instruction Was Contrary to Well-Established Vermont Law ........................................ 20

iii. If the Court Finds that Vermont Law Does Not Establish But-For Causation, It Should Certify the Question to the Vermont Supreme Court ........................................ 24

b. Dr. Porter's Procedural Arguments Misstate the Law ........................................ 25

i. Dr. Porter's Arguments Regarding Rule 59 Improperly Attempt to Narrow the Scope of this Appeal ........................................ 25

ii. Dartmouth Health Did Not Waive Its Right to Appellate Review of the Court's Same-Decision Instruction ....27

iii. Dr. Porter's Argument Regarding Pleading Omissions is Likewise Incorrect ....30

II. The District Court's Evidentiary Rulings Related to Damages Issues Were Erroneous ....32

a. The 2025 Bancroft Report Was Not Proper "Supplementation." ....32

b. Dr. Porter's Framing of C-19 as Argument Does Not Justify Its Exclusion ....39

III. Dr. Porter's Challenges to the District Court's Fee and Interest Determinations Should Be Rejected ....42

a. Introduction and Standard of Review ....42

b. The District Court's Reduction of the Requested Hourly Rates Based on Prevailing Community Rates Was Not an Abuse of Discretion ....44

c. The District Court's 10% Reduction for Limited Success Was Not an Abuse of Discretion ....51

d. The District Court Properly Rejected Dr. Porter's Request for Pre-Judgment Interest on Attorney's Fees ....57

IV. CONCLUSION ....61

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany*,
522 F.3d 182 (2d Cir. 2008) ........................................................ 45, 48

*Ashley v. City of New York*,
992 F.3d 128 (2d Cir. 2021) ........................................................ 32

*Baker v. Dorfman*,
239 F.3d 415 (2d Cir. 2000) ........................................................ 50

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
537 F.3d 132 (2d Cir. 2008) ........................................................ 52, 53, 54

*Bergerson v. N.Y. State Off. of Mental Health*,
652 F.3d 277 (2d Cir. 2011) ........................................................ 45

*Castaldi v. Land Rover N. Am., Inc.*,
363 F.App'x 761 (2d Cir. 2009) ........................................................ 41

*Centrella v. Ritz-Craft Corp. of Pa., Inc.*,
Civil Action No. 2:14–cv–111–jmc, 2018 WL 840041
(D. Vt. Feb. 12, 2018) ........................................................ 4

*Chambless v. Masters, Mates & Pilots Pension Plan*,
885 F.2d 1053 (2d Cir. 1989) ........................................................ 47

*Chaney v. Vermont Bread Co.*,
No. 2:21-CV-120, 2024 WL 1270788 (D. Vt. Mar. 26, 2024) ........................ 5

*Cole v. Foxmar, Inc.*,
Case No. 2:18-cv-00220, 2024 WL 4609023 (D. Vt. Oct. 29, 2024),
*vacated and remanded on other grounds*, 160 F.4th 28 (2d Cir. 2025) .......... 5, 55

*Concepts NREC, LLC v. Xuwen Qiu*,
Civil Action No. 5:20-cv-133, 2025 WL 2793049 (D. Vt. July 21, 2025) ........ 5

*Degreenia-Harris v. Life Ins. Co. of N. Am.*,
No. 2:19-CV-00218, 2021 WL 5979683 (D. Vt. Dec. 17, 2021) .................... 4-5

*Donovan v. Milk Mktg., Inc.*,
243 F.3d 584 (2d Cir. 2001) .................... 30, 31

*EBWS, LLC v. Britly Corp.*,
928 A.2d 497 (Vt. 2007) .................... 58

*Fine Foods, Inc. v. Dahlin*,
523 A.2d 1228 (Vt. 1986) .................... 46

*Gallipo v. City of Rutland*,
656 A.2d 635 (Vt. 1994) .................... 21, 22

*Gates v. Mack Molding Co., Inc.*,
279 A.3d 656 (Vt. 2022) .................... 15

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) .................... 42, 43

*H.C. v. N.Y.C. Dep't of Educ.*,
71 F.4th 120 (2d Cir. 2023) .................... 42

*Ha v. Conn*,
Case No. 2:20-cv-155, 2023 WL 5287214 (D. Vt. Aug. 17, 2023) .................... 5

*Hammond v. University of Vermont Medical Center*,
308 A.3d 421 (Vt. 2023) .................... 10, 16

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................... 52, 55

*Hodgdon v. Mt. Mansfield Co.*,
624 A.2d 1122 (Vt. 1992) .................... 21, 22

*Huard v. Henry*,
999 A.2d 1264 (Vt. 2010) .................... 52, 53

*Hugee v. Kimso Apartments, LLC*,
852 F. Supp. 2d 281 (E.D.N.Y. 2012) .......................................................... 46-47

*In re Thilman*,
557 B.R. 294 (Bankr. E.D.N.Y. 2016) ...............................................................37

*India.Com, Inc. v. Dalal*,
412 F.3d 315 (2d Cir. 2005)...........................................................................27

*Jankowski v. Centurion of Vermont, LLC*,
Civil Action No. 2:22-cv-169-cr-kjd, 2024 WL 48855
(D. Vt. Jan. 4, 2024)....................................................................................5

*Jarvis v. Ford Motor Co.*,
283 F.3d 33 (2d Cir. 2002).............................................................................28

*John Wiley & Sons, Inc. v. Kirtsaeng*,
654 F.3d 210 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 519 (2013)......28

*Kahle v. Leonard*,
563 F.3d 736 (9th Cir. 2009)...........................................................................35

*Kassim v. City of Schenectady*,
415 F.3d 246 (2d Cir. 2005)..................................................................... 52, 57

*Kennedy v. Dep't of Pub. Safety*,
719 A.2d 405 (Vt. 1998)................................................................................15

*Knapp v. State*,
729 A.2d 719 (Vt. 1998).................................................................. 11, 20, 22, 23

*Lamay v. State*,
49 A.3d 559 (Vt. 2012)............................................................................ 20, 22

*Lidle v. Cirrus Design Corp.*,
No. 08 Civ. 1253 (BSJ) (HBP), 2009 WL 4907201
(S.D.N.Y. Dec. 18, 2009) ........................................................................ 36, 37

*Lilly v. City of New York*,
934 F.3d 222 (2d Cir. 2019)....................43

*Luke v. Family Care & Urgent Med. Clinics*,
323 F.App'x 496 (9th Cir. 2009)....................37

*Martin v. Lyon*,
2024 VT 68, 329 A.3d 184....................58

*McDaniel v. County of Schenectady*,
595 F.3d 411 (2d Cir. 2010).................... 42, 43

*McKinstry v. Fecteau Residential Homes*, Inc.,
131 A.3d 1123 (Vt. 2015)....................53

*Merck Eprova AG v. Gnosis, S.p.A.*,
760 F.3d 247 (2d Cir. 2014)....................6, 8

*Minebea Co., Ltd. v. Pabstm*,
231 F.R.D. 3 (D.D.C. 2005)....................35

*Minott v. Google LLC*,
24-CV-01674 (MMG), 2024 WL 3518525 (S.D.N.Y. July 24, 2024)....................50

*Mueller v. Rutland Mental Health Servs.*,
1:05-CV-38, 2006 WL 2585101 (D. Vt. Aug. 17, 2006)....................15

*Murray v. UBS Securities, LLC*,
128 F.4th 363 (2d Cir. 2025).................... 27, 32

*Natofsky v. City of New York*,
921 F.3d 337 (2d Cir. 2019).................... *passim*

*Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*,
915 A.2d 750.................... 45, 46, 48

*Ring v. Carriage House Condo. Owners' Ass'n*,
112 A.3d 754 (Vt. 2014).................... 46, 52, 59

*Rivard v. Smallheer*,
No. 22-CV-04364, 2023 WL 7309300 (Vt. Super. Wash. Cnty. Oct. 20, 2023), *aff'd*, No. 23-AP-338, 2024 WL 1481590 (Vt. Apr. 5, 2024) ....................5, 49

*Robertson v. Mylan Labs., Inc.*,
848 A.2d 310 (Vt. 2004).................................... 21, 22

*RSD Leasing, Inc. v. Navistar Int'l Corp.*,
81 F.4th 153 (2d Cir. 2023).................................... 24, 25

*Salatino v. Chase*,
939 A.2d 482 (Vt. 2007)....................................59

*Schneiderman v. Am. Chem. Soc'y*,
172 F.4th 158 (2d Cir. 2026).................................... 25, 26

*Shapiro v. United States Soc. Sec. Admin.*,
No. 2:19-CV-000238, 2022 WL 951371 (D. Vt. Mar. 30, 2022), *vacated on other grounds*, 160 F.4th 347 (2d Cir. 2025)....................................5

*Simmons v. N.Y.C. Transit Auth.*,
575 F.3d 170 (2d Cir. 2009)....................................45

*Sista v. CDC Ixis North America, Inc.*,
445 F.3d 161 (2d Cir. 2006)....................................16

*State v. G.S. Blodgett Co.*,
656 A.2d 984 (Vt. 1995)....................................15

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
Case No. 5:16-cv-125, 2021 WL 1851404 (D. Vt. May 10, 2021)...............4, 49

*United States v. Lasko*,
146 F.App'x 530 (2d Cir. 2005) ....................................41

*Vail v. Vermont Agency of Transp.*,
No. 2012-339, 2013 WL 2631328 (Vt. May 8, 2013)....................................15

*Wallace v. Caring Solutions, LLC*,
278 A.3d 586 (Conn. App. Ct. 2022) ........................................................ 18, 19

*Wang v. Shun Lee Palace Rest., Inc.*,
17-CV-840 (VSB), 2023 WL 5022758 (S.D.N.Y. July 24, 2023) ......................50

*Washington v. Philadelphia County Court of Common Pleas*,
89 F.3d 1031 (3d Cir. 1996) ........................................................................ 48, 49

*Williams v. E. Meadow Union Free Sch. Dist.*,
No. 2:21-CV-03310-NJC-JMW, 2025 WL 218829
(E.D.N.Y. Jan. 16, 2025) ...................................................................................37

*Windsor Sch. Dist. v. State*,
956 A.2d 528 (Vt. 2008) ....................................................................................58

**Statutes and Other Authorities:**

42 U.S.C. § 2000e-2(m) ......................................................................................17

42 U.S.C. § 2000e-5(g)(2)(B) ...............................................................................17

42 U.S.C. § 12112(a) ............................................................................................18

21 V.S.A. § 495b(b) ..............................................................................................44

21 Vt. Stat. § 495(a)(1) .................................................................................. 17, 19

Conn. Gen. Stat. § 46a-60(b) ...............................................................................17

Fed. R. Civ. P. 26 ...................................................................................... 36, 37, 38

Fed. R. Civ. P. 26(a)(1)(B) ...................................................................................38

Fed. R. Civ. P. 26(a)(3) .........................................................................................36

Fed. R. Civ. P. 26(a)(3)(B) ...................................................................................36

Fed. R. Civ. P. 26(e) ..................................................................................... 11, 32, 37

Fed. R. Civ. P. 26(e)(2) .........................................................................................36

Fed. R. Civ. P. 51 ........................................ 11, 27, 28

Fed. R. Civ. P. 51(c)(1) ........................................ 28

Fed. R. Civ. P. 51(d)(2) ........................................ 28

Fed. R. Civ. P. 59 ........................................ 25, 26, 27

Fed. R. Civ. P. 59(a) ........................................ 26

Fed. R. Civ. P. 59(e) ........................................ 26

Fed. R. Evid. 107(a) ........................................ 40

N.H. Stat. § 354-A:7 ........................................ 18

Rehabilitation Act, § 504 ........................................ 15

Reporter's Notes – 1981 Amendment, V.R.C.P. 54(a) ........................................ 58

## STATEMENT OF THE ISSUES

Dartmouth Health repeats and reincorporates the Statement of the Issues set forth in its principal brief. (Brief for Defendants-Appellants-Cross-Appellees ("Dartmouth Health Br."), Dkt. Entry 67.1, 2–3). As to the issues set forth in Dr. Porter's principal brief (Brief for Plaintiff-Appellee-Cross Appellant ("Porter Br."), Dkt. Entry 70.1, 2–4), Dartmouth Health frames the issues as follows:

1. In connection with its award of attorney's fees to Dr. Porter, did the District Court abuse its discretion by moderately reducing the hourly rates for some, but not all, attorneys who worked on this matter based on its review of at least ten (10) recent fee awards from the pertinent legal community, where Dr. Porter failed to meet her burden of establishing the prevailing rate?

2. In connection with its award of attorney's fees to Dr. Porter, did the District Court abuse its discretion by applying a 10% across-the-board reduction to account for Dr. Porter's partial or limited success, where the jury found in her favor on only one out of six claims, found in Dartmouth

Health's favor on her primary claims, awarded significantly less than the damages she sought, and declined to award punitive damages?

3. Did the District Court abuse its discretion by declining to award pre-judgment interest on Dr. Porter's award of attorney's fees, where Dr. Porter failed to identify even a single case — from any jurisdiction — in which a court awarded pre-judgment interest on attorney's fees in connection with a VFEPA claim?

## STATEMENT OF THE CASE

Dartmouth Health repeats and reincorporates the Statement of the Case set forth in its principal brief. (Dartmouth Health Br. 4–15). As to the issues set forth in Dr. Porter's cross-appeal, Dartmouth Health states as follows:

This matter was tried before a jury between March 24, 2025 and April 10, 2025. (A-24–A-28). In his opening statement, counsel for Dr. Porter framed the case as primarily concerning two issues: (i) disability discrimination and (ii) "more important[ly]," whistleblower retaliation. (Day 1 Trial Tr., 145:14-21, *Blanchette Porter v. Dartmouth-Hitchcock Med. Ctr.*, No. 2:17-cv-00194-KJD (D. Vt.), ECF No. 344). On April 10, 2025, the jury reached a verdict in which it found in Dr. Porter's favor on only one (1) out of fourteen (14) questions and one (1) out of six (6) total claims. (A-922–A-932). It specifically rejected Dr. Porter's claims of whistleblower retaliation and wrongful discharge. *Id.* The jury awarded damages in the total amount of $1,125,000 — approximately twenty-five percent (25%) of the amount Dr.

Porter's damages expert previously opined she had incurred. (A-933; A-292). It declined to award any punitive damages. (A-934).

Post-trial, Dr. Porter filed a Motion for Attorney's Fees, a Bill of Costs, and Supplemental Memoranda in Support of Attorney's Fees in which she sought a total of $1,818,201.29 in attorney's fees and costs. (SPA-18). The only evidence she provided in support of the purported reasonableness of the requested hourly rates were declarations from two of her attorneys. (A-973–A-992).

In a fifty-five (55)-page decision, the District Court carefully considered the parties' arguments and the relevant case law. (SPA-17–SPA-71). With respect to the hourly rate to be applied, the District Court reviewed and analyzed the rates awarded in at least ten (10) separate cases from the District of Vermont and Vermont Superior Court. (SPA-32–SPA-37) (citing *Centrella v. Ritz-Craft Corp. of Pa., Inc.*, Civil Action No. 2:14–cv–111–jmc, 2018 WL 840041, at *6–7 (D. Vt. Feb. 12, 2018); *Sullivan v. Saint-Gobain Performance Plastics Corp.*, Case No. 5:16-cv-125, 2021 WL 1851404, at *2 (D. Vt. May 10, 2021); *Degreenia-Harris v. Life Ins. Co. of N. Am.*, No. 2:19-CV-00218, 2021 WL

5979683, at *10–11 (D. Vt. Dec. 17, 2021); *Shapiro v. United States Soc. Sec. Admin.*, No. 2:19-CV-000238, 2022 WL 951371, at *3 (D. Vt. Mar. 30, 2022), *vacated on other grounds,* 160 F.4th 347 (2d Cir. 2025); *Ha v. Conn*, Case No. 2:20-cv-155, 2023 WL 5287214, at *2 (D. Vt. Aug. 17, 2023); *Rivard v. Smallheer,* No. 22-CV-04364, 2023 WL 7309300, at *2 (Vt. Super. Wash. Cnty. Oct. 20, 2023); *Chaney v. Vermont Bread Co.,* No. 2:21-CV-120, 2024 WL 1270788, at *3–4 (D. Vt. Mar. 26, 2024); *Cole v. Foxmar, Inc*., Case No. 2:18-cv-00220, 2024 WL 4609023, at *4 (D. Vt. Oct. 29, 2024), *vacated and remanded on other grounds,* 160 F.4th 28 (2d Cir. 2025); *Jankowski v. Centurion of Vermont, LLC,* Civil Action No. 2:22-cv-169-cr-kjd, 2024 WL 48855, at *2 (D. Vt. Jan. 4, 2024); *Concepts NREC, LLC v. Xuwen Qiu,* Civil Action No. 5:20-cv-133, 2025 WL 2793049, at *3 (D. Vt. July 21, 2025).

Based on its analysis, the District Court concluded that some (but not all) of the requested hourly rates were either "not reasonable" or "not warranted." (SPA-36). In making its determination, the Court noted that the Second Circuit has held that "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of

awarding windfall fees." (SPA-36–SPA-37) (citing *Merck Eprova AG v. Gnosis, S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014)). The Court therefore made moderate adjustments to the requested hourly rates as follows:

| Attorney | Title | Requested Rate | Awarded Rate | Adjusted Amount |
|---|---|---|---|---|
| Geoffrey Vitt | Partner | $320 (2017–2022)<br>$400 (2024–2025) | $300<br>$350 | $20<br>$50 |
| Sarah Nunan | Attorney<br>Partner | $150 (2020–2022)<br>$250 (2024–2025) | $150<br>$250 | None<br>None |
| Sarah Merlo | Of Counsel | $200 (2017–2020)<br>$325 (2024–2025) | $200<br>$250 | None<br>$75 |
| Eric Jones | Partner | $375 (2024)<br>$395 (2025) | $325<br>$350 | $50<br>$45 |
| Alison Bell | Partner | $415 | $300 | $115 |
| Bridget Grace | Associate | $225 | $225 | None |
| Wendy Radcliff | Associate | $250 | $250 | None |
| Katie Kramer | Partner | $175 (2018–2020)<br>$450 (2024) | $175<br>$350 | None<br>$100 |
| | Paralegals | $50–155 (2017—2025) | $90 | $40-65 |

The District Court declined to omit fees incurred before Dr. Porter amended her Complaint to add the VFEPA claim (the sole successful claim at trial), explaining that "Dr. Porter's VFEPA claim is not distinct from the other claims alleged in the lawsuit" and "[a]ll of Dr. Porter's claims are interrelated both factually and legally." (SPA-42–SPA-43). It further rejected

Dartmouth Health's argument that, because Dr. Porter prevailed on only one of six claims, secured less than 25% of the damages she originally sought, and that the jury answered only one of fourteen (14) questions in Dr. Porter's favor, it should have reduced the lodestar amount by between 83.3% (5/6) and 92.86% (13/14). (SPA-51).

Reasoning that "[a]ll of the claims in Dr. Porter's case, including the VFEPA claim, share a common core of facts and legal issues," the District Court refused Dartmouth Health's request to reduce the lodestar amount for failure to succeed on any claims wholly unrelated to the VFEPA claim. (SPA-52–SPA-54). Instead, the Court concluded that "[a]lthough Dr. Porter's unsuccessful non-VFEPA claims are interrelated with her successful VFEPA claim, the Court must account for the fact that the jury did not find in Dr. Porter's favor on five of her six claims; declined to award punitive damages; and awarded a lesser amount of damages than Dr. Porter's expert opined she incurred. These considerations warrant a modest downward adjustment to Dr. Porter's fee award[.]" (SPA-54–SPA-55). It applied an across-the-

board reduction of 10% to the lodestar amount to account for Dr. Porter's limited success. (SPA-55).

In the same decision, the District Court declined Dr. Porter's request for an award of prejudgment interest on her attorney's fees. (SPA-60–SPA-61). The District Court explained that Dr. Porter had failed to cite a single binding case or advance any persuasive argument that prejudgment interest should be applied to her fee award. *Id*.

Dartmouth Health notes that Dr. Porter's Statement of the Case inexplicably contains an eight (8)-page recitation of her version of the facts presented at trial. (Porter Br. at 11–18). Dr. Porter apparently seeks to relitigate whether a causal connection exists between Dr. Porter's disability and the termination of her employment. That question, however, is not before this Court.

The jury in this case declined to find that Dartmouth Health terminated Dr. Porter's employment because of her disability; it found only that Dr. Porter's disability was a "motivating factor" in her termination. (A-929–A-932). The only causation-related question for this Court to decide

relates to whether the jury instructions reflected an erroneous statement of the law. Dr. Porter's attempt to relitigate the jury's decision by convincing the Court that she was a "superbly-competent" physician is of no relevance to her appeal. (Porter Br. at 11).

## SUMMARY OF ARGUMENT

The judgment on Dr. Porter's VFEPA claim cannot stand because the District Court instructed the jury on an incorrect causation standard. Vermont courts have repeatedly stated that the disability discrimination provisions of VFEPA are patterned on the federal Rehabilitation Act and Americans with Disabilities Act. Under *Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019), those statutes require but-for causation. Dr. Porter's reliance on generalized statements that VFEPA sometimes tracks Title VII does not answer the disability-specific question presented here, and neither *Hammond v. University of Vermont Medical Center*, 308 A.3d 421 (Vt. 2023), nor the out-of-state authorities she cites hold that motivating factor causation governs disability claims under VFEPA after *Natofsky*. The District Court therefore erred in instructing the jury that Dr. Porter could prevail by showing only that disability was a motivating factor in her termination.

Even if motivating factor causation applied, the District Court's charge was still erroneous because it affirmatively instructed the jury that Dartmouth Health could not avoid liability by proving it would have made

the same decision absent any discriminatory motive. Vermont's mixed motive decisions, including *Knapp v. State*, 729 A.2d 719 (Vt. 1998), state the opposite. Dr. Porter's arguments that Dartmouth Health waived this point by failing to plead it specifically or object with sufficient specificity are incorrect. The same-decision showing is not subject to a special pleading requirement, and, in any event, Federal Rule of Civil Procedure 51 does not bar review of a plainly erroneous instruction affecting substantial rights.

If this Court concludes that Vermont law does not definitively resolve the causation issue, it should certify the question to the Vermont Supreme Court rather than affirm a substantial judgment on the basis of an uncertain reading of state law.

The District Court also abused its discretion in its damages rulings. The 2025 Bancroft Report was not a true supplementation under Federal Rule of Civil Procedure 26(e), but a substantively revised expert opinion served less than a week before trial after Dartmouth Health's evidentiary challenge exposed defects in the prior report. The District Court further erred in permitting Dr. Porter to elicit pension-related opinion testimony not

adequately disclosed in the operative report, while denying Dartmouth Health any meaningful opportunity for expert rebuttal. It also improperly barred Dartmouth Health from using Exhibit C-19 as a demonstrative aid in closing argument, even though the exhibit arose directly from the cross-examination of Dr. Porter's own expert and would have helped the jury evaluate Dartmouth Health's damages argument.

Dr. Porter's cross-appeal should likewise be rejected. The District Court applied the correct legal standard in determining reasonable hourly rates by reference to prevailing community rates, and its moderate reductions were well within its discretion. Its 10% across-the-board reduction was likewise proper, where Dr. Porter prevailed on only one of six claims, failed on the theory her counsel identified as primary at trial, recovered substantially less than the damages her expert claimed, and obtained no punitive damages. Finally, the District Court correctly denied prejudgment interest on attorney's fees, because such fees were not liquidated or readily ascertainable until the District Court adjudicated the

fee application. The fee award and denial of prejudgment interest should therefore be affirmed.

# ARGUMENT

## I. Dartmouth Health's Challenges to the Jury Instructions are Neither Incorrect Nor Waived.

### *a. Dr. Porter's Substantive Arguments Fail to Address Dartmouth Health's Primary Points on Appeal.*

#### i. The Court's "Motivating Factor" Instruction Was Erroneous.

Dr. Porter's defense of the District Court's "motivating factor" instruction rests on the generalized premise that, because Vermont courts often look to Title VII when interpreting VFEPA, Title VII's causation standard necessarily applies to disability discrimination claims under VFEPA. (*See* Porter Br. at 28–33). However, the question presented here is narrower than that. It is not whether VFEPA has historically drawn on Title VII; it is whether the disability provisions of VFEPA are governed by Title VII's motivating factor standard or by the ADA/Rehabilitation Act's but-for standard. On that question, Vermont precedent points to the latter.

As explained in Dartmouth Health's principal brief, Vermont courts have repeatedly stated that the disability provisions of VFEPA are patterned on the Rehabilitation Act and, by extension, the ADA — not Title VII. *See*,

*e.g.*, *Gates v. Mack Molding Co., Inc.*, 279 A.3d 656, 663 (Vt. 2022) ("The disability-discrimination provisions under the FEPA are patterned after the federal Rehabilitation Act, which in turn incorporates standards from the federal Americans with Disabilities Act (ADA)…"); *State v. G.S. Blodgett Co.*, 656 A.2d 984, 988 (Vt. 1995) ("The handicapped discrimination provisions under VFEPA are patterned after § 504 of the Rehabilitation Act…"); *Kennedy v. Dep't of Pub. Safety*, 719 A.2d 405, 406 (Vt. 1998) (same); *Vail v. Vermont Agency of Transp.*, No. 2012-339, 2013 WL 2631328, at *5 (Vt. May 8, 2013) ("[W]e note that the standards applicable to both FEPA and the federal Rehabilitation Act are borrowed from the Americans with Disabilities Act (ADA)."); *Mueller v. Rutland Mental Health Servs.*, 1:05-CV-38, 2006 WL 2585101, at *2 (D. Vt. Aug. 17, 2006) ("The standards and burdens of proof under the VFEPA are identical to those under the ADA."). Under *Natofsky v. City of New York*, the ADA and Rehabilitation Act require but-for causation. 921 F.3d 337, 348 (2d Cir. 2019). Once that federal causation question was settled, the disability-specific Vermont precedents became the relevant authority.

The cases cited by Dr. Porter may support the unremarkable proposition that VFEPA sometimes borrows from Title VII. However, they do not establish that, after *Natofsky*, disability discrimination claims under VFEPA continue to employ a motivating factor standard despite Vermont's repeated declarations that disability claims are linked to the Rehabilitation Act and ADA.

Nor does *Hammond v. University of Vermont Medical Center*, 308 A.3d 421 (Vt. 2023), answer the question on appeal. *Hammond* did not analyze the causation issue, did not discuss *Natofsky*, and did not hold that motivating factor causation applies to VFEPA disability claims. To the contrary, when setting out the elements of a disability discrimination claim, *Hammond* cited *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161 (2d Cir. 2006) —an ADA case. 308 A.3d at 433. Dr. Porter asks this Court to treat *Hammond's* generalized statement that VFEPA is "patterned on Title VII" as though it silently displaced decades of disability-specific Vermont precedent. But *Hammond* did not confront that issue, and cannot fairly be read as an

adoption of Title VII's motivating factor standard for disability claims after *Natofsky*.

Dr. Porter's "unified statute" theory is likewise unpersuasive. She argues that because VFEPA is drafted as a unified antidiscrimination statute, all protected categories must apply the same causation standard. (Porter Br. at 31–32). However, unified drafting also does not answer the question presented here. The text of VFEPA itself treats disability differently from the categories protected by Title VII. Indeed, Section 495(a)(1) makes it unlawful to discriminate against any individual "because of race, color, religion, ancestry, national origin, sex, sexual orientation, gender identity, place of birth, crime victim status, or age ***or against a qualified individual with a disability***." 21 Vt. Stat. § 495(a)(1) (emphasis added). Unlike Title VII (42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B)), VFEPA does not contain an express motivating factor provision. And unlike the Connecticut statute on which Dr. Porter relies, VFEPA does not uniformly use "because of" language across all categories, including disability. *See* Conn. Gen. Stat. § 46a-60(b) ("It shall be a discriminatory practice . . . [f]or an employer . . . to

discriminate against any individual . . . because of the individual's race, color, religious creed, age, sex, gender identity or expression . . . mental disability, intellectual disability, learning disability, physical disability[.] . . ."). To the contrary, VFEPA more closely mirrors the language of the ADA. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability[.]").

Indeed, the District Court's own charge in this case undermines Dr. Porter's unified statute argument. The District Court instructed the jury that but-for causation governed Dr. Porter's disability discrimination claim under New Hampshire's Law Against Discrimination—a similarly unified antidiscrimination statute. (A-918; *see* N.H. Stat. § 354-A:7). If unified drafting alone compelled motivating factor causation, as the District Court suggested in its order denying Dartmouth Health's request for post-trial relief (SPA-76), its own instruction as to Dr. Porter's disability claim under New Hampshire law would have been erroneous.

For the same reason, Dr. Porter's reliance on *Wallace v. Caring Solutions, LLC*, 278 A.3d 586 (Conn. App. Ct. 2022), is misplaced. In *Wallace*, the

Connecticut Appellate Court considered whether the "because of" language in Connecticut's antidiscrimination statute required but-for causation across all protected categories, including disability. *Id.* at 602. The court reasoned that because the Connecticut statute used the same causation language for disability and non-disability claims, there was no basis to adopt a different standard for disability. *Id*. Here, by contrast, the VFEPA does not mirror that structure. VFEPA uses "because of" language for the Title VII-like categories and then separately prohibits discrimination "against a qualified individual with a disability." 21 Vt. Stat. § 495(a)(1). The central premise underlying the *Wallace* court's reasoning is therefore absent here. Moreover, Vermont precedent already treats disability as a distinct category linked to federal disability law. *Wallace* does not overcome that body of authority.

Ultimately, Dr. Porter asks the Court to answer a disability-specific causation question by resort to generalized statements about VFEPA and Title VII, while disregarding Vermont case law regarding disability claims and the federal precedent that now governs causation under the ADA and Rehabilitation Act. Because Vermont courts have repeatedly tied VFEPA

disability claims to the Rehabilitation Act and ADA, and because *Natofsky* holds that those statutes require but-for causation, the District Court erred in instructing the jury to apply a motivating factor standard.

ii. The Court's "Same-Decision" Instruction Was Contrary to Well-Established Vermont Law.

Dr. Porter is likewise incorrect in arguing that the District Court's jury instruction on the same-decision showing was permissible. (Porter Br. at 40-42). In *Knapp v. State*, 729 A.2d 719, 721–22 (Vt. 1998), the Vermont Supreme Court held that where a plaintiff shows that disability was a motivating factor in the termination decision, the burden shifts back to the employer to prove that it would have made the same decision even absent the discriminatory motive, and that a trial court's failure to instruct the jury as much constitutes reversible error. Vermont courts have described the framework in the same terms both before and after *Knapp*. *See, e.g.*, *Lamay v. State,* 49 A.3d 559, 561–62 (Vt. 2012) ("Once the plaintiff shows that the decision was at least partially motivated by an illegitimate reason, the burden then shifts to the employer to show that the same decision would have been made even if the illegitimate reason had not been considered."

(citation omitted)); *Robertson v. Mylan Labs., Inc.*, 848 A.2d 310, 318 (Vt. 2004) ("This Court has adopted . . . the *Price Waterhouse* . . . framework[]." (citation omitted)); *Gallipo v. City of Rutland,* 656 A.2d 635, 640 (Vt. 1994) ("If plaintiff presents evidence that an impermissible factor played a motivating part in the employment decision, then the burden shifts to, and remains with, the employer, who must show that it would have made the same decision even if it had not considered the impermissible factor."); *Hodgdon v. Mt. Mansfield Co.*, 624 A.2d 1122, 1128 (Vt. 1992) ("The *Price Waterhouse* framework is invoked when the plaintiff initially establishes that her [protected status] played a motivating part in an employment decision."). Those decisions leave no doubt that the same-decision showing is embedded in the liability framework of the mixed-motive standard.

Dr. Porter does not even address this Vermont authority. Instead, she relies on 1991 amendments to Title VII and argues that those federal amendments eliminated the same-decision defense for purposes of liability. (Porter Br. at 41–42). Notably, earlier in her brief, Dr. Porter emphasized that Vermont law is "guided, but not constrained, by federal discrimination

law." (Porter Br. at 29 n.6). Yet, on this point she asks the Court to treat the 1991 amendments to Title VII as having displaced Vermont Supreme Court precedent — despite repeated Vermont decisions, issued after 1991, continuing to articulate the same-decision framework in *Price Waterhouse* terms.

Neither the Vermont Legislature nor the Vermont Supreme Court has ever repudiated *Price Waterhouse* or *Knapp*. To the contrary, Vermont courts have reaffirmed the same-decision framework on multiple occasions after 1991. *See Lamay*, 49 A.3d at 561–62; *Knapp*, 729 A.2d at 721–22; *Robertson*, 848 A.2d at 318–20; *Gallipo*, 656 A.2d at 640; *Hodgdon*, 624 A.2d at 1128. Dr. Porter offers no response to that line of authority. She cites no Vermont decision suggesting that the 1991 amendments to Title VII altered Vermont law, and no Vermont authority adopting Title VII's post-1991 distinction between liability and remedies. In the face of express and repeated Vermont precedent to the contrary, her reliance on federal statutory amendments is misplaced.

The District Court's error on this point goes directly to the liability standard submitted to the jury. Indeed, the jury found for Dr. Porter only on the VFEPA claim, the sole claim as to which it received the erroneous motivating factor instruction and the erroneous statement that same-decision proof could not avoid liability. Under any standard of review, that misstatement was prejudicial. At minimum, it constitutes plain error because it contradicted established Vermont law on a matter central to the verdict and necessarily affected Dartmouth Health's substantial rights. Accordingly, Dr. Porter's substantive defense of the District Court's same-decision instruction fails. Once the District Court chose to submit the VFEPA claim under a mixed-motive theory, Vermont law required that the jury be instructed that Dartmouth Health could prevail by showing it would have made the same decision even absent any discriminatory motive. *Knapp*, 729 A.2d at 721–22. The District Court's contrary instruction was erroneous and warrants reversal.

iii. If the Court Finds that Vermont Law Does Not Establish But-For Causation, It Should Certify the Question to the Vermont Supreme Court.

Dr. Porter is also incorrect that the District Court properly declined certification to the Vermont Supreme Court. To be sure, Dartmouth Health's principal submission is that existing Vermont law, properly applied, requires but-for causation for disability discrimination claims under VFEPA. But if this Court concludes that Vermont law does not provide a sufficiently clear answer, certification is the appropriate alternative.

This case presents the precise circumstances in which certification is warranted: the question is one of Vermont statutory law, it is important to the administration of Vermont's employment discrimination regime, and it is outcome-determinative. *See RSD Leasing, Inc. v. Navistar Int'l Corp.*, 81 F.4th 153, 169–70 (2d Cir. 2023) (listing factors the court considers in deciding whether to exercise its discretion to certify a question). Indeed, Dr. Porter previously acknowledged the absence of controlling authority on the effect of *Natofsky* on disability discrimination claims under Vermont law and requested certification on that basis. (Brief and Special Appendix for

Plaintiff-Appellant, *Porter v. Dartmouth-Hitchcock Med. Ctr.*, No. 20-3894 (2d Cir. Mar. 8, 2021)). The District Court likewise recognized that it was only making a prediction as to how the Vermont Supreme Court would rule. (SPA-83). Where the operative question remains one of prediction rather than authoritative resolution, certification is appropriate. *RSD Leasing*, 81 F.4th at 169.

*b. Dr. Porter's Procedural Arguments Misstate the Law.*

i. Dr. Porter's Arguments Regarding Rule 59 Improperly Attempt to Narrow the Scope of this Appeal.

Dr. Porter's threshold argument regarding Federal Rule of Civil Procedure 59 misstates both the nature of Dartmouth Health's post-trial motion and the scope of this appeal. Citing authority addressing motions for reconsideration, Dr. Porter contends that Dartmouth Health was required to identify "controlling decisions or data that the court overlooked" in order to obtain relief under Rule 59. (Porter Br. 26 (quoting *Schneiderman v. Am. Chem. Soc'y*, 172 F.4th 158, 190 (2d Cir. 2026)). That framing is a red herring.

Dartmouth Health did not merely file a motion for reconsideration as contemplated by the *Schneiderman* court. It moved, pursuant to Rules 59(a) and (e), to alter or amend the judgment or, in the alternative, for a new trial based on legal errors in the jury instructions and evidentiary rulings. (A-1445–A-1458). Nothing in Rule 59 limits such relief to arguments based only on matters the district court "overlooked," nor does Rule 59 bar a party from renewing objections that were previously raised and preserved during trial.

Dartmouth Health objected to the VFEPA causation instruction before the case was submitted to the jury. (A-807). It subsequently invoked Rule 59 to request that the District Court amend the judgment or order a new trial. (A-1445–A-1458). The District Court denied that relief (SPA-72–SPA-83), and Dartmouth Health now seeks appellate review of both the jury instructions and the District Court's denial of the post-judgment motion. Dr. Porter cannot avoid this Court's determination of the underlying legal issues by recasting Dartmouth Health's appeal as though it were merely seeking review of a motion for reconsideration.

Moreover, appellate review of the District Court's jury instruction does not depend upon the filing of a Rule 59 motion at all. Erroneous jury instructions are independently reviewable on appeal from a final judgment. *Compare Murray v. UBS Securities, LLC*, 128 F.4th 363, 367–68 (2d Cir. 2025) ("[W]here the challenging party objects to the charge at trial, we review the instruction *de novo*.") *with India.Com, Inc. v. Dalal,* 412 F.3d 315, 320 (2d Cir. 2005) ("…[M]otions under Rule 59 [are reviewed] for abuse of discretion.")

Dartmouth Health's post-trial motion provided the District Court with an additional opportunity to consider the jury instructions; it did not create the underlying issue, and the denial does not insulate the ruling from review. Accordingly, Dr. Porter's discussion of Rule 59 provides no basis to reject Dartmouth Health's appellate arguments.

ii. <u>Dartmouth Health Did Not Waive Its Right to Appellate Review of the Court's Same-Decision Instruction.</u>

Dr. Porter's separate contention that Dartmouth Health failed to object to the Court's same-decision instruction with sufficient specificity fares no better. (*See* Porter Br. at 37–39). To be sure, Federal Rule of Civil Procedure 51 generally requires a party objecting to a jury instruction to "stat[e]

distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). But Rule 51 further provides that "[a] court may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2). Thus, even accepting for the sake of argument that Dartmouth Health did not articulate its objection to the same-decision component of the VFEPA charge with sufficient particularity, that would establish at most a separate standard of review. It would not foreclose review altogether.

The decisions Dr. Porter cites do not say otherwise. In *John Wiley & Sons, Inc. v. Kirtsaeng*, 654 F.3d 210, 223 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 519 (2013), the Court stated that failure to object before the jury deliberates ordinarily results in waiver, but also recognized that an unpreserved objection to a jury instruction may still be reviewed for plain error. The same is true of *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002), which acknowledged that a court may review an erroneous charge even where a party has not fully complied with Rule 51's objection requirements. Dr. Porter thus overstates these cases when she cites them for

the proposition that Dartmouth Health "waived the right to object" to the same-decision showing instruction.

Regardless, Dartmouth Health did preserve the substance of its objection. At the charge conference, Dartmouth Health objected to the District Court's decision to instruct the jury that the VFEPA claim was governed by a motivating-factor standard rather than but-for causation. (A-807). That objection necessarily challenged the legal framework of the VFEPA instruction. Once the District Court elected to give a motivating factor instruction, it was required to state the law applicable to that standard correctly.

Under Vermont law, the same-decision showing is part of the mixed-motive framework and the jury must be instructed accordingly. *See* Section I(a)(ii), *supra*. Once the District Court chose to instruct on motivating factor causation, it was obligated to do so accurately. Because Vermont law incorporates the same-decision showing into that framework, the District Court's contrary instruction was erroneous regardless of how Dr. Porter characterizes Dartmouth Health's objection. Accordingly, Dr. Porter's

specificity argument provides no basis to affirm the VFEPA verdict. Whether reviewed *de novo* or for plain error, the same-decision instruction cannot be sustained.

iii. Dr. Porter's Argument Regarding Pleading Omissions is Likewise Incorrect.

Dr. Porter's assertion that Dartmouth Health cannot appeal the District Court's "same-decision" instruction because it was not listed as an affirmative defense in the Answer is also incorrect as a matter of law. (Porter Br. at 35–37). As an initial matter, the Second Circuit has expressly rejected the proposition that the mixed-motive same-decision showing is subject to a pleading requirement. In *Donovan v. Milk Mktg., Inc.*, 243 F.3d 584, 586 (2d Cir. 2001), the Court explained that references to mixed-motive analysis as an "affirmative defense" concern the allocation of the burden of persuasion, but do not impose a heightened pleading requirement. Specifically, the Court stated: "Our references to the mixed-motive analysis as an 'affirmative defense' signified that the burden of persuasion on the relevant question shifts to the defendant if the jury finds that the plaintiff has shown the presence of the prohibited motivation; ***they were not intended to impose any***

***special pleading requirements on the defendant***." *Id.* (emphasis added). Dr. Porter cites no authority holding otherwise. Her waiver argument fails at the outset.

Nor was there any lack of notice. Dartmouth Health's Answer expressly stated that any challenged employment action was taken for "legitimate, non-discriminatory reasons," and that Dr. Porter could not establish pretext. (A-129). The Second Circuit has held that exactly this language is sufficient to preserve the contention that Dartmouth Health would have made the same decision absent any alleged discriminatory motive. *Donovan*, 243 F.3d at 586 ("[T]he defendants expressly stated in their answer that they were motivated by 'legitimate, non-discriminatory reasons.' We see no reason why they should have been obligated to designate this contention as 'the mixed motive affirmative defense' in order to receive a jury charge explaining the shifted burden under the *Price Waterhouse* theory.").

Moreover, Dr. Porter's pleading argument misses Dartmouth Health's central point. Dartmouth Health is not attempting to inject an untimely

defense into this matter. Rather, it is arguing that, once the District Court elected to submit the VFEPA claim under a motivating factor theory, it was required to instruct the jury accurately on the governing law associated with that theory. *See Murray, LLC*, 128 F.4th at 368 (jury instruction is erroneous if it "misleads the jury as to the correct legal standard or does not adequately inform the jury of the law"); *Ashley v. City of New York*, 992 F.3d 128, 142 (2d Cir. 2021) (same). Its failure to do so warrants relief from this Court.

## II. The District Court's Evidentiary Rulings Related to Damages Issues Were Erroneous.

### *a. The 2025 Bancroft Report Was Not Proper "Supplementation."*

Dr. Porter's defense of the 2025 Bancroft Report rests on the false premise that the report merely "supplemented" prior opinions by incorporating developments that occurred over time. (Porter Br. at 42–49). The record shows otherwise. The 2025 Bancroft Report was not proper supplementation under Federal Rule of Civil Procedure 26(e); it was a new expert opinion served on the eve of trial after Dartmouth Health's pretrial challenge exposed factual and analytical defects in the prior report. Rule 26(e) permits supplementation to correct inaccuracies or account for

information that was not previously available; it does not allow an expert to rebuild an expert opinion after motion practice and an evidentiary hearing reveal that the earlier opinion rested on unsupported assumptions or omitted facts.

As of the March 14, 2025 evidentiary hearing, Dr. Bancroft did not have Dr. Porter's 2024 W-2. (A-346). His operative report assumed that, had Dr. Porter remained at Dartmouth Health, she would have received annual 2.5% salary increases, despite the absence of earnings history supporting that assumption. (A-341–A-344). His report also assumed, based solely on Dr. Porter's own assertion, that she would have been promoted to full professor had she remained at Dartmouth Health. (A-340). It likewise assumed, again based on nothing but Dr. Porter's own projection, that beginning January 1, 2025, she would work at only 60% capacity at the University of Vermont ("UVM"), but would have worked at 100% capacity at Dartmouth Health for the same period. (A-355–A-358). Dr. Bancroft admitted that if the assumption were removed, the damages figure would be "not even close" to what he had reported. (A-358). Nor had he accounted for certain benefits

associated with Dr. Porter's UVM employment, including tuition reimbursement benefits for her son's education. (A-354).

The 2025 Bancroft Report did not merely make clerical corrections to the 2024 Bancroft Report. Dr. Bancroft himself described the March 19, 2025 report as containing "eight substantive changes" from his previous report — four due to "new information" and four due to "the passage of time." (A-434). The untimely report expressly identified "Dr. Porter's actual 2024 UVM earned income" as one of those substantive changes. *Id*. That alone refutes Dr. Porter's assertion that the 2024 Bancroft Report already reflected Dr. Porter's "complete earnings data." (Porter Br. at 45). To the contrary, the 2024 Bancroft Report merely assumed that Dr. Porter's 2024 earnings would reflect a 3% increase in her 2023 W-2 earnings. (A-339–A-340). If the 2024 report had already incorporated complete and current earnings information, there would have been no reason for the 2025 Bancroft Report to identify Dr. Porter's actual 2024 earned income as a substantive revision.

Dr. Porter's brief also blurs the relevant timeline. In defending the 2025 Bancroft Report, she cites Dr. Bancroft's testimony at the March 14

evidentiary hearing to suggest Dartmouth Health's contention that the 2025 Bancroft Report reflected a changing theory is "completely unfounded." (Porter Br. at 47). But that hearing occurred before the 2025 Bancroft Report was served. Self-serving testimony given on March 14 cannot establish that a report served on March 19 did not materially revise Dr. Bancroft's analysis. The relevant question is whether the final report introduced new assumptions and new analyses. Dr. Bancroft's own characterization of the 2025 Bancroft Report confirms that it did.

Nor do the authorities cited by Dr. Porter support the District Court's ruling. In *Kahle v. Leonard*, 563 F.3d 736, 741 (9th Cir. 2009), the supplemental material merely quantified an already-disclosed treatment need based on a later-developed release date. That is not what happened here, where Dr. Bancroft inserted eight substantive changes into his economic loss model less than one week before trial. *Minebea Co., Ltd. v. Pabstm* 231 F.R.D. 3, 6–7 (D.D.C. 2005), actually itself cuts against Dr. Porter, because it recognizes that supplementation is improper where the information could have been compiled earlier. Much of the information reflected in the 2025 Bancroft

Report was plainly available well before trial. Information about Dr. Porter's 2024 earnings, promotion to full professor, and tuition reimbursement benefits was not newly created in March 2025; it simply had not been incorporated into the earlier report. *See Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253 (BSJ) (HBP), 2009 WL 4907201, at *6 (S.D.N.Y. Dec. 18, 2009) ("[Expert's] Report does not rely [on] any information that was previously unknown or unavailable to him. Plaintiffs control the [evidence relevant to the report]; it has always been available to their experts.").

Dr. Porter is also wrong in asserting that "there was no violation of a discovery order or discovery rule in this case." (Porter Br. at 49). Rule 26(e)(2) requires any additions or changes to expert disclosures be made by the time Rule 26(a)(3) pretrial disclosures are due —at least 30 days before trial. Fed. R. Civ. P 26(e)(2); 26(a)(3)(B). Trial began on March 24, 2025. The 2025 report was served on March 19, 2025 — five days before trial, and well after the Rule 26 deadline. (A-434–A-438). Discovery had long since closed. The report was untimely on its face.

The District Court excused that untimeliness on the ground that the 2025 Bancroft Report responded to Dartmouth Health's March 14, 2025 cross-examination at the evidentiary hearing. (SPA-87). But that reasoning turns Rule 26 on its head. A party may not fail to provide necessary expert inputs, wait until a pretrial hearing exposes the omissions, and then characterize a materially revised expert opinion as supplementation. *See Williams v. E. Meadow Union Free Sch. Dist.*, No. 2:21-CV-03310-NJC-JMW, 2025 WL 218829, at *5 (E.D.N.Y. Jan. 16, 2025) ("Having chosen to utilize an incorrect methodology in calculating damages, as [expert] has done here, does not warrant admitting a supplemental report aimed at correcting that flawed method."); *In re Thilman*, 557 B.R. 294, 303 (Bankr. E.D.N.Y. 2016) ("Rule 26(e) is not a loophole through which a party . . . who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed.") (quoting *Luke v. Family Care & Urgent Med. Clinics,* 323 Fed.Appx. 496, 500 (9th Cir. 2009)); *Lidle,* 2009 WL 4907201, at *5 ("Rule 26(e) is not … a vehicle to permit a party to serve a deficient

opening report and then remedy the deficiency through the expedient of a 'supplemental' report.").

The same disclosure problem occurred with Dr. Bancroft's trial testimony. On direct examination, Dr. Porter elicited pension-related opinion testimony over Dartmouth Health's objection, even though the operative report and chart did not set forth the pension analysis in the form presented to the jury. (A-565–A-566). Dr. Porter responds that Dartmouth Health had "notice" of pension issues because defense counsel asked general questions on the subject during Dr. Bancroft's 2019 deposition. (Porter Br. at 46–47, citing A-276–A-278). Awareness of a general topic is not the same as disclosure, and Rule 26 required the report itself to contain "a complete statement of all opinions and the basis and reasons for them." Fed. R. Civ. P. 26(a)(1)(B).

The 2025 Bancroft Report introduced eight (8) substantive changes days before trial, yet Dartmouth Health was denied the opportunity to present a rebuttal. The District Court abused its discretion in permitting testimony and evidence derived from Dr. Bancroft's untimely report.

*b. Dr. Porter's Framing of C-19 as Argument Does Not Justify Its Exclusion.*

Dr. Porter next contends that the District Court properly precluded the use of C-19 because it reflected an argument by Dartmouth Health as opposed to an opinion by Dr. Bancroft. (Porter Br. at 49–50). Not so.

Exhibit C-19 was created during Dartmouth Health's cross-examination of Dr. Bancroft. (A-720–A-723; A-733–A-735; A-1485). In response to questioning, Dr. Bancroft wrote out a calculation reflecting what Dr. Porter's earnings at UVM would have been if she had worked the same hours there that he assumed she would have worked at Dartmouth Health. (A-719–A-723). The exhibit did not consist of argument by Dartmouth Health untethered to the evidence; it was a demonstrative prepared on the stand by an expert witness while applying assumptions central to his own damages analysis. As such, it was directly relevant to Dartmouth Health's point that Dr. Bancroft's damages model was materially inflated because it compared differing work assumptions.

Even accepting Dr. Porter's characterization of C-19 as reflecting Dartmouth Health's argument rather than Dr. Bancroft's adopted "opinion,"

that would not support the District Court's prohibition on its use as a demonstrative aid during closing argument. Demonstratives are permitted not only to assist the jury in understanding evidence, but also to help present argument based on that evidence. *See* Fed. R. Evid. 107(a) ("The court may allow a party to present an illustrative aid to help the trier of fact understand the evidence ***or argument***…" (emphasis added)). C-19 was a demonstrative illustration, derived from testimony, that would have aided the jury in evaluating Dartmouth Health's challenge to Dr. Porter's purported economic loss.

The prejudicial nature of the ruling is especially evident when viewed in context. The District Court permitted Dr. Porter to display a demonstrative chart derived from the 2025 Bancroft Report in closing argument, while Dartmouth Health was precluded from using the only comparable visual aid supporting its central rebuttal point. (A-835–A842; A-889).

Nor was exclusion necessary to avoid juror confusion. If the District Court believed C-19 risked being misunderstood as substantive evidence or

as an opinion of Dr. Bancroft, any such concern could have been addressed by a limiting instruction. *See, e.g.*, *Castaldi v. Land Rover N. Am., Inc.*, 363 F.App'x 761 (2d Cir. 2009) (explaining that any prejudice arising from use of a demonstrative derived from expert testimony was fixed by instruction that the chart was merely a demonstrative aid and that the soundness of expert's testimony depended upon the quality of evidence from which it was drawn); *United States v. Lasko*, 146 F.App'x 530, 532 (2d Cir. 2005) (holding that the District Court properly instructed the jury that a chart was not in evidence but was being offered as a synthesis of previously admitted testimony). Instead, the District Court forbid Dartmouth Health from using C-19 even as a demonstrative aid in closing. That was an abuse of discretion. Whatever weight the jury ultimately chose to give the calculation, Dartmouth Health was entitled to illustrate its damages argument by reference to a calculation elicited from Dr. Bancroft on cross-examination.

## III. Dr. Porter's Challenges to the District Court's Fee and Interest Determinations Should Be Rejected.

### *a. Introduction and Standard of Review*

Dr. Porter's cross-appeal asks this Court to do what it has repeatedly said appellate courts should not do in the fee-setting context: second-guess the District Court's discretionary judgments as to reasonable rates, reasonable reductions, and supplemental relief. Her arguments invite this Court to micromanage discretionary decisions of the District Court. That is not the standard of review.

An award of attorney's fees is reviewed for abuse of discretion. *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 125 (2d Cir. 2023); *McDaniel v. County of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47–48 (2d Cir. 2000)). The standard is especially deferential in the fee context because the district court is uniquely situated to assess the case, including the significance of the result and the reasonableness of the rates claimed. As this Court has explained, the deference accorded under abuse of discretion review "takes on special significance when reviewing fee decisions because the district court, which

is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record." *McDaniel*, 595 F.3d at 416 (quoting *Goldberger*, 209 F.3d at 47–48) (internal marks omitted).

Dr. Porter attempts to frame her appeal as presenting "questions of law" subject to *de novo* review. (Porter Br. at 24–25). The decision she cites does not support her position. *Lilly v. City of New York*, 934 F.3d 222, 277 (2d Cir. 2019), states that an abuse of discretion occurs, *inter alia*, where a fee award is based on an erroneous view of the law. It further emphasizes that appellate review of fee awards remains highly "highly deferential." *Id*. Indeed, *Lilly* reiterates that it is difficult to imagine "a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." *Id*. (citation omitted). That observation aptly describes Dr. Porter's cross-appeal, which asks this Court to revisit the District Court's assessment of prevailing rates in the forum, reduce or eliminate the District Court's modest across-the-board adjustment for limited success, and add

prejudgment interest on attorney's fees notwithstanding the absence of any legal entitlement to such relief.

The District Court did not commit error. It carefully considered the relevant factors, explained its reasoning at length, and exercised precisely the sort of judgment that abuse of discretion review protects from appellate second-guessing. Because Dr. Porter identifies no ruling outside the range of permissible decisions, the fee award and denial of prejudgment interest should be affirmed.

*b. The District Court's Reduction of the Requested Hourly Rates Based on Prevailing Community Rates Was Not an Abuse of Discretion.*

Dr. Porter contends that the District Court erred in reducing certain requested hourly rates because it supposedly "erroneously believed it was constrained by the 'forum rule'," and because Dartmouth Health did not specifically object to the requested rates. (Porter Br. 52–57). Neither point has merit.

Under VFEPA, a prevailing party may recover only "reasonable attorney's fees." 21 V.S.A. § 495b(b). Vermont courts have long held that "the touchstone" of a fee award under Vermont law "is reasonableness."

*Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*, 915 A.2d 750, 755 (citation omitted). Likewise, under federal fee jurisprudence, the relevant inquiry is not what counsel chose to bill or what a particular client agreed to pay, but the rate necessary to yield a presumptively reasonable fee in light of prevailing market conditions. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–76 (2d Cir. 2009) (discussing the "forum rule").

Under federal law, the inquiry generally focuses on prevailing rates in the forum in which the court sits. *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011) (presumptively reasonable fee is generally based on rates prevailing in the district); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany*, 522 F.3d 182, 191 (2d Cir. 2008) (out-of-district rates are appropriate only in the "unusual case" where the party seeking them affirmatively demonstrates that retention of out-of-district counsel was reasonable under the circumstances). Vermont law is to the same effect. "Determining what would be a reasonable fee in a particular matter is ordinarily a question of fact," and the fee applicant bears the burden of establishing the prevailing rate charged by "other attorneys for

similar services in the same vicinity and in the same court." *Fine Foods, Inc. v. Dahlin*, 523 A.2d 1228, 1232 (Vt. 1986); *see also Perez*, 915 A.2d at 756 ("[T]he standard is relatively flexible and requires only that the party seeking fees provide a basis for comparing the rates requested to prevailing rates.") (citation omitted); *Ring v. Carriage House Condo. Owners' Ass'n,* 112 A.3d 754, 762 (Vt. 2014) ("We decline to . . . abandon our general principles placing upon the requesting party the burden to provide evidence of services upon which value can be determined[.]" (citation modified)).

Dr. Porter did not carry that burden. The affidavits submitted in support of her fee request established, at most, rates her own attorneys charged or asserted they customarily charged. (A-973–A-983). But Vermont law expressly distinguishes between the amount actually charged to a client and the prevailing market rate for comparable services. As the Vermont Supreme Court has explained, in the civil rights fee context, an award should be based on prevailing market rates, not merely "the amount that the plaintiff actually paid to his or her attorney." *Perez*, 915 A.2d at 757 (citation omitted). The same principle applies under federal law. *See Hugee v. Kimso*

*Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) (noting that fee applicant must produce satisfactory evidence, "***in addition to*** the attorney's own affidavits," that the requested rates are in line with those prevailing in the community) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989) (emphasis added)).

Dr. Porter's repeated assertion that the District Court "erroneously believed it was constrained by the 'forum rule'" therefore misses the mark. (Porter Br. at 22, 53). The District Court did not apply an erroneous legal standard. Far from abusing its discretion, the District Court did exactly what both Vermont and Second Circuit precedent require: it examined prevailing rates in the relevant community and compared those rates to the rates requested here. (SPA-32–SPA-37). Dr. Porter cites no authority holding that it is error—let alone an abuse of discretion—for a district court to use prevailing forum rates as the benchmark for determining reasonableness. To the contrary, that is the standard method for fixing a reasonable hourly rate.

Nor does Dartmouth Health's failure to object specifically to the requested rates alter the analysis. Even absent a rate-by-rate objection, the

burden remained with Dr. Porter to establish the reasonableness of the requested rates with competent evidence, and the District Court retained an independent obligation to determine a reasonable fee. *Perez*, 915 A.2d at 757; *see Arbor Hill*, 522 F.3d at 184 ("Indeed, the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively.").

The cases on which Dr. Porter relies do not hold otherwise. In *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031 (3d Cir. 1996), for example, the fee applicant supported his request not only with his own affidavit, but also with affidavits from multiple other attorneys practicing similar employment discrimination law in the relevant community. *Id.* at 1035–36. Dr. Porter presented no comparable evidentiary showing here. Thus, even if *Washington* were binding authority on this Court, it would not undermine the District Court's determination.

Instead, the District Court found that Dr. Porter had "provided no reason" to depart from the rates reflected in comparable Vermont decisions.

(SPA-36). It then conducted a careful review of at least ten recent decisions involving fee awards in Vermont, assessed the reasonableness of the requested rates in light of those authorities, and made moderate adjustments where it concluded the requested amounts were "not reasonable" or "not warranted." *Id*. That is the very essence of discretionary fee adjudication.

The authorities cited by Dr. Porter as supposedly comparable do not demonstrate otherwise. *Rivard v. Smallheer*, No. 22-CV-04364, 2023 WL 7309300, at *2 (Vt. Super. Oct. 20, 2023), *aff'd*, No, 23-AP-338, 2024 WL 1481590 (Vt. Apr. 5, 2024), arose in a materially different context (anti-SLAPP litigation) and does not establish prevailing rates for similar services in a case of this kind. *Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-125, 2021 WL 1851404, at *2 (D. Vt. May 10, 2021), involved rates for specialized, national-level environmental counsel. The District Court was not required to treat those as comparators, particularly where Dr. Porter failed to develop a record showing that those rates represented the prevailing rates for similar services in the Vermont market.

Finally, Dr. Porter's new assertion that her attorneys' historical rates should be "increased to current rates" is forfeited. (Porter Br. at 55–56). She did not request such relief in the District Court. (A-961–A-972). An argument not raised below ordinarily may not be asserted for the first time on appeal. *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000). Even if the argument were preserved, the cases she cites do not support the proposition that a prevailing party is entitled, as of right, to have all historical fees retroactively recalculated at higher "current" rates irrespective of what was actually billed. In *Minott v. Google LLC*, 24-CV-01674 (MMG), 2024 WL 3518525, at *6 (S.D.N.Y. July 24, 2024), the attorney was not seeking to recover fees at a rate in excess of what the attorney actually charged for the work at issue, as Porter is here. Rather, the Court was distinguishing a separate decision — issued four years earlier — in which the same attorney's rate was determined for work she performed in a separate case, in a different jurisdiction, with a different firm, as a first-year associate. In *Wang v. Shun Lee Palace Rest., Inc.*, 17-CV-840 (VSB), 2023 WL 5022758, at *3 (S.D.N.Y. July 24, 2023), the Court considered whether work performed in 2021 and 2022

should reflect billing rates for the same years, as opposed to the rate previously awarded for work that had occurred in years prior. Neither case is relevant here.

In sum, the District Court applied the correct legal standard, carefully reviewed comparable authority, and made modest rate adjustments supported by the record. Dr. Porter's disagreement with that assessment does not establish abuse of discretion.

*c. The District Court's 10% Reduction for Limited Success Was Not an Abuse of Discretion.*

Dr. Porter next challenges the District Court's modest 10% across-the-board reduction for limited success. (Porter Br. at 58–60). That challenge fares no better than her rate challenge. Both federal and Vermont law recognize that the degree of success obtained is a relevant factor in determining a reasonable fee award, and that fee awards may — and often should — be reduced where the prevailing party achieved only partial or limited success. The District Court appropriately applied that principle here.

The United States Supreme Court has long held that a fee applicant who achieves only partial success is not automatically entitled to recover all

fees incurred in the litigation. Where a plaintiff presents multiple claims for relief and succeeds on only some of them, the district court must separately consider (i) whether the unsuccessful claims were unrelated to the successful ones and (ii) whether the overall result justifies the amount sought. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "[Th]e most critical factor is the degree of success obtained." *Id*. at 436. Both the Vermont Supreme Court and the Second Circuit have applied that principle and recognized that lower courts may make across-the-board percentage reductions to reflect limited success. *See, e.g., Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152–54 (2d Cir. 2008); *Kassim v. City of Schenectady*, 415 F.3d 246, 254–55 (2d Cir. 2005); *Ring*, 112 A.3d at 762; *Huard v. Henry*, 999 A.2d 1264, 1271 (Vt. 2010).

Here, Dr. Porter prevailed on only one of six claims submitted to the jury. The jury rejected her whistleblower claim under New Hampshire law, rejected her wrongful discharge claim, rejected her ADA claim, rejected her Rehabilitation Act claim, and rejected her New Hampshire disability discrimination claim. (A-929–A-935). Of the fourteen (14) questions presented on the special verdict form, the jury answered only one in Dr.

Porter's favor. *Id.* It also declined to award punitive damages. *Id.* Moreover, Dr. Porter's recovery was far below the amount of damages that her damages expert opined she had incurred. As recently as two weeks before trial, Dr. Bancroft testified that Dr. Porter had suffered in excess of $4 million in economic loss. (A-338). The jury instead awarded $1,000,000 in economic damages and $125,000 in non-economic damages. (A-933). The difference between the amount sought and the amount recovered strongly supports the District Court's conclusion that Dr. Porter achieved only partial success. *See Barfield,* 537 F.3d at 152–53 (affirming reduction where plaintiff recovered only a fraction of the relief sought); *McKinstry v. Fecteau Residential Homes*, Inc., 131 A.3d 1123, 1129 (Vt. 2015) (same).

This conclusion is reinforced by the primary litigation objective Dr. Porter herself identified at trial. In his opening statement, Dr. Porter's counsel framed the case as principally one about retaliation for whistleblowing:

> And the basis of the lawsuit is the unlawful termination of Misty's employment after 21 years at Dartmouth-Hitchcock. The unlawfulness consists of two things: One, they discharged her because of her

> disability ***and, more important, and probably you'll hear more about it, is she was discharged because she was a whistleblower.*** She spoke truth to power, and it cost her.

(Day 1 Trial Tr., 145:14-21, ECF No. 344) (emphasis added). The jury rejected that theory in its entirety. Under *Barfield*, the District Court was entitled to assess success in light of the "primary aim" of the litigation and the extent to which that aim was achieved. 537 F.3d at 152. Where Dr. Porter's principal trial theme failed, the District Court acted well within its discretion in concluding that her overall success was limited.

Despite the disparity between Dr. Porter's asserted claims and damages and the results she actually obtained, the District Court reduced her attorneys' fees by only 10%. (SPA-55). It rejected Dartmouth Health's request for a reduction in excess of 80%, and held that Dr. Porter had achieved a meaningful result. (SPA-50–SPA-55). It further concluded that work on the successful and unsuccessful claims overlapped, and declined to make a claim-by-claim reduction. *Id*. Instead, it accounted for her limited success by making a moderate adjustment and awarded the vast majority of the fees requested. To the extent Dr. Porter suggests the District Court

performed "a simple calculation of counts won versus counts lost or the percentage of requested damages actually recovered" (Porter Br. at 59), her position is entirely unsupported by the District Court's decision. Indeed, the District Court expressly declined Dartmouth Health's request to reduce the fees awarded by 83.3% (5/6) to account for five out of six claims being unsuccessful. (SPA-51). The District Court's approach was entirely consistent with the law. *See Hensley*, 461 U.S. at 436–37 ("But had respondents prevailed on only one of their six general [factually and legally interrelated] claims . . . a fee award based on the claimed hours clearly would have been excessive."); *Cole v. Foxmar, Inc.*, 160 F.4th 28, 35 (2d Cir. 2025) ("[C]onsidering a plaintiff's damages award as *one* factor relevant to the ultimate question . . . of whether the fee award is reasonable given the demands of the case is not the same as reducing a plaintiff's fee award because it is disproportionate to the plaintiff's damages award.") (citation modified)).

Dr. Porter's disability discrimination and whistleblower claims turned on materially different facts and legal theories. The disability discrimination

claims required proof regarding Dr. Porter's alleged disability, her qualifications, her accommodations, the extent to which disability-related considerations influenced Dartmouth Health's decisions, and the causation standards specific to those statutes. (A-907–A-919). The whistleblower and wrongful discharge claims, by contrast, turned on whether Dr. Porter engaged in protected reporting activity, whether Dartmouth Health retaliated against her for that activity, and whether New Hampshire whistleblower or common law standards were satisfied. (A-904–A-907; A-919–A-922). Different witnesses, different documentary proof, different causation theories, and different legal instructions were at issue. The legal work necessary to prove disability discrimination was not identical to the work necessary to prove retaliation for whistleblowing. Notwithstanding the vast factual and legal differences between these claims, the District Court found each of Dr. Porter's claims to be interrelated such that it declined to exclude the hours spent on her unsuccessful claims from the lodestar amount. (SPA-54). Instead, it appropriately recognized that Dr. Porter's success was limited in both scope and degree and imposed a modest 10%

reduction rather than attempting to excise time entries with mathematical precision. *See Kassim*, 415 F.3d at 256 ("Our circuit has thus clearly adopted the view. . . that a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory.").

Finally, this Court's review must be highly deferential. The District Court presided over the trial, the post-trial motions, and the fee application. It was in the best position to evaluate the overall reasonableness of the requested award in light of the outcome obtained. The District Court's limited-success adjustment was not an abuse of discretion and should be affirmed.

*d. The District Court Properly Rejected Dr. Porter's Request for Pre-Judgment Interest on Attorney's Fees.*

Dr. Porter's challenge to the District Court's denial of prejudgment interest on attorney's fees she claims to have paid out of pocket fares no better. Attorney's fees awarded under a fee-shifting statute are not compensatory damages found by the jury; they are collateral amounts

awarded by the court only after a separate determination of entitlement and reasonableness. Under Vermont law, such amounts are not liquidated or readily ascertainable in advance of adjudication. The District Court therefore acted well within its discretion in denying prejudgment interest on the fee award.

Dr. Porter concedes, as she must, that the issue of pre-judgment interest is controlled by Vermont law. (Porter Br. at 61–62). Vermont's prejudgment interest principles are well settled. Prejudgment interest is awarded as of right only when "the principal sum recovered is liquidated or capable or ready ascertainment" and otherwise lies within the court's discretion. *Martin v. Lyon*, 2024 VT 68, ¶ 10, 329 A.3d 184 (quoting Reporter's Notes – 1981 Amendment, V.R.C.P. 54(a)); *see also EBWS, LLC v. Britly Corp.*, 928 A.2d 497, 509 (Vt. 2007). The rationale is straightforward: where damages are liquidated or determinable by a reasonably certain standard as of the time of the tort, the defendant can avoid the accrual of interest by tendering that amount and thereby avoid benefitting from delay. *Windsor Sch. Dist. v. State*, 956 A.2d 528 (Vt. 2008) (citation omitted). Prejudgment

interest thus serves to avoid injustice arising from the withholding of sums that were ascertainable and payable earlier; it is not designed to provide a windfall.

Attorney's fees do not fit that model. A fee award under VFEPA depends on a judicial determination that the party prevailed, that the requested fees were reasonable, and that any reductions for excess, duplication, lack of success, or other factors are appropriate. Until the court performs that analysis, there is no fixed amount that could have been tendered to stop the running of interest. Vermont authority therefore appropriately recognizes that attorney's fees are not liquidated for prejudgment-interest purposes until fixed by the court. *Ring*, 112 A.3d 754, 766–67; *Salatino v. Chase*, 939 A.2d 482, 488 (Vt. 2007).

That principle controls here. The amount of Dr. Porter's "reasonable" attorney's fees — even those she claims to have paid out of pocket — was neither known in advance nor readily ascertainable. To the contrary, the District Court undertook a detailed fee analysis, including review of prevailing market rates, the reasonableness of the hours claims, and the

extent to which a reduction for limited success was appropriate. The District Court ultimately reduced the requested hourly rates, applied a limited-success reduction, and awarded less than the amount being sought. (SPA-17–SPA-71). Until the District Court ruled, Dartmouth Health could not have known what amount (if any) it owed for Dr. Porter's attorney's fees.

Nor has Dr. Porter shown any basis to disturb the District Court's discretionary denial of such interest. She cites not a single case in which a court awarded prejudgment interest on a Vermont statutory attorney's fee award. Instead, the authority she relies on concerns prejudgment interest on damages, not attorney's fees, and/or discusses the general compensatory purpose of prejudgment interest without holding that such interest should be added to a fee award.

In short, attorney's fees were not liquidated, were not readily ascertainable, and were not fixed until the District Court ruled on the fee petition. Vermont law does not require prejudgment interest, and the District Court's refusal to award to award it was not an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, and for the reasons set forth in Dartmouth Health's principal brief, this Court should reverse the judgment entered on Dr. Porter's VFEPA claim and remand with instructions to enter judgment for Dartmouth Health or, at a minimum, order a new trial on that claim. The Court should also vacate the damages award and remand for a new trial on damages. In the alternative, if the Court concludes that Vermont law does not provide a sufficiently clear answer as to the causation standard governing disability discrimination claims under VFEPA, it should certify that question to the Vermont Supreme Court. The Court should further affirm the District Court's award of attorney's fees and its denial of prejudgment interest on attorney's fees.

Dated: August 14, 2026

/s/ *Donald W. Schroeder*
Donald W. Schroeder
Morgan McDonald
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001

Tristram J. Coffin
DOWNS RACHLIN MARTIN PLLC
199 Main Street
Burlington, VT 05402
Tel.: (802) 863-2375

*Attorneys for Defendants-Appellants-Cross-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 28.1 and Local Rule 28.1.1(a).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 10,731 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Palatino Linotype and complies with the typeface requirements of Fed. R. App. P. 28.1(e)(2).

3. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of Microsoft Word in preparing this certificate.

Dated: August 14, 2026

/s/ *Donald W. Schroeder*
Donald W. Schroeder
Morgan McDonald
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001

Tristram J. Coffin
DOWNS RACHLIN MARTIN PLLC
199 Main Street
Burlington, VT 05402
Tel.: (802) 863-2375

*Attorneys for Defendants-Appellants-Cross-Appellees*