# 25-1382-cv(L), 25-3155-cv(XAP)

## United States Court of Appeals
*for the*
## Second Circuit

MISTY BLANCHETTE PORTER, M.D.,

*Plaintiff-Appellee-Cross-Appellant,*

– v. –

DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, DARTMOUTH-HITCHCOCK HEALTH, DARTMOUTH-HITCHCOCK MEDICAL CENTER,

*Defendants-Appellants-Cross-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT (BURLINGTON)

**REPLY BRIEF FOR PLAINTIFF-APPELLEE-CROSS-APPELLANT**

SARAH NUNAN
GEOFFREY J. VITT
VITT & NUNAN, PLC
8 Beaver Meadow Road
P.O. Box 1229
Norwich, Vermont 05055
(802) 649-5700

– and –

ERIC D. JONES
LANGROCK SPERRY & WOOL, LLP
210 College Street, Suite 400
Burlington, Vermont 05401
(802) 864-0217

*Attorneys for Plaintiff-Appellee-Cross-Appellant*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (395990)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 4

I. DR. PORTER MADE A *PRIMA FACIE* SHOWING OF REASONABLENESS, AND DARTMOUTH HEALTH DID NOT CHALLENGE IT ........ 4

A. Counsel for Dr. Porter provided uncontested evidence that their requested rates were reasonable and customary for the area ........ 6

B. Numerous factors, acknowledged by the District Court, supported higher-than-average rates ........ 10

C. The District Court misconstrued the law and ignored policy when it applied a 10% across-the-board reduction in Dr. Porter's legal fees claiming "somewhat limited success" ........ 13

II. DR. PORTER SHOULD HAVE BEEN COMPENSATED IN THE FEE AWARD FOR DELAY ........ 16

A. Prejudgment interest at the statutory rate of 12% should have been awarded ........ 17

B. Alternatively, the fee award should have been calculated at current hourly rates ........ 20

CONCLUSION ........ 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
522 F.3d 182 (2d Cir. 2008) .......... 5

*Baker v. Dorfman*,
239 F.3d 415 (2d Cir. 2000) .......... 21

*Balu v. City of New York*,
No. 12 CIV. 1071 (KPF), 2016 WL 884666 (S.D.N.Y. Mar. 8, 2016) .......... 8, 21

*Bank of Am., N.A. v. New England Quality Serv., Inc.*,
790 Fed. App'x. 314 (2d Cir. 2019) .......... 7

*Barfield v. New York City Health & Hosps. Corp.*,
537 F.3d 132 (2d Cir. 2008) .......... 14

*Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*,
942 F.3d 106 (2d Cir. 2019) .......... 17

*Capitol Env't Servs., Inc. v. Earth Tech., Inc.*,
25 So. 3d 593 (Fla. Dist. Ct. App. 2009) .......... 19

*CARCO GROUP, Inc. v. Maconachy*,
718 F.3d 72 (2d Cir. 2013) .......... 12

*Cole v. Foxmar, Inc.*,
160 F.4th 28 (2d Cir. 2025) .......... *passim*

*Cole v. Foxmar, Inc.*,
No. 2:18-cv-00220, 2026 WL 2056451 (D. Vt. July 16, 2026) .......... 1, 4, 21

*Courthouse News Serv.* v. *Gabel*,
Case No. 2:21-CV-000132, 2026 WL 1694596 (2d Cir. June 11, 2026) .......... 10, 11

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
825 F. Supp. 361 (D. Mass. 1993), *aff'd and remanded*,
36 F.3d 1147 (1st Cir. 1994) .......... 19

*Farbotko v. Clinton Cnty. of New York*,
433 F.3d 204 (2d Cir. 2005) .......... 8

*Fine Foods, Inc. v. Dahlin*,
147 Vt. 599 (1986) .......... 10

*Huard v. Henry*,
188 Vt. 540 (2010) ..................................................................................13

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998) ............................................................... 3, 21

*Lilly v. City of New York*,
934 F.3d 222 (2d Cir. 2019) ............................................................ 2, 3, 5

*Makinen v. City of New York*,
No. 111CV07535ALCAJP, 2016 WL 1451543 (S.D.N.Y. Apr. 12, 2016)...... 7, 15

*Missouri v. Jenkins*,
491 U.S. 274 (1989)............................................................... 17, 21, 22

*New England P'Ship, Inc. v. Rutland City Sch. Dist.*,
No. 2002-476, 2003 WL 25745409 (Vt. June 1, 2003) ......................................18

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)............................................................ 4, 6, 21, 22

*Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*,
2006 VT 123, 181 Vt. 45, 915 A.2d 750................................................... 5, 7, 10

*Polk v. New York State Dept. of Correctional Servs.*,
722 F.2d 23 (2d Cir. 1983) .....................................................................10

*Raja v. Burns*,
43 F.4th 80 (2d Cir. 2022)......................................................................15

*Rhodes v. Davis*,
628 F. App'x 787 (2d Cir. 2015) ................................................................2

*Rivard v. Smallheer*,
No. 22-CV-04364, 2023 WL 7309300 (Vt. Super. Oct. 20, 2023), *aff'd by*,
No. 23-AP-388, 2024 WL 1481590 (Vt. Apr. 5, 2024) ..........................................9

*Simmons v. N.Y.C. Transit Auth.*,
575 F.3d 170 (2d Cir. 2009) ....................................................................14

*Spooner v. Town of Topsham*,
2010 VT 71, 188 Vt. 293, 9 A.3d 672..........................................................3, 5

*Stewart Title Guar. Co. v. Tilden*,
181 F.3d 94 (Wyo. 2008) .........................................................................19

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
Case No. 5:16-cv-125, 2021 WL 1851404 (D. Vt. May 10, 2021) ........................9

*Thomas v. iStar Fin., Inc.*,
652 F.3d 141 (2d Cir. 2011) ........................................................................ 2, 20

*Vastano v. Killington Valley Real Est.*,
2010 VT 12, 187 Vt. 628, 996 A.2d 170...............................................................19

*Washington v. Philadelphia Cnty. Ct. of Common Pleas*,
89 F.3d 1031 (3d Cir. 1996) ..........................................................................3, 8

**Statutes & Other Authorities:**

21 Vt. Stat. Ann. § 495b(b) ................................................................................4

Vt. R. Civ. P. 54(a) ..........................................................................................18

## SUMMARY OF ARGUMENT

Appellee/Cross-Appellant Dr. Misty Blanchette Porter's cross-appeal challenges the legal assumptions applied by the District Court to reduce the attorney's fees awarded to Dr. Porter as the prevailing party in the dispute between Dr. Porter and her former employers, Appellants/Cross-Appellees Dartmouth Health, Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, and Mary Hitchcock Memorial Hospital (together, "Dartmouth Health"). The District Court reduced the hourly rates requested by Dr. Porter and her counsel—which counsel for Dartmouth Health *had already conceded were reasonable*—while also denying prejudgment interest on attorney's fees incurred and paid by Dr. Porter prior to August 2020.[1] On top of this, the District Court imposed a 10% downward adjustment to the overall award for alleged "limited success." In doing so, the

[1] Consistent with the "make whole" goals of civil rights statutes and their fee-shifting provisions, Dr. Porter sought prejudgment interest on these fees (calculated at the historical hourly rate paid by Dr. Porter) to redress the impact of being "out of pocket" for those fees for more than six years without compensation. Increasing historical rates to current rates is an alternative way that courts address delay in civil rights cases which by nature often involve an extended period of time between initiating the case and obtaining payment. *See, e.g., Cole v. Foxmar, Inc.*, No. 2:18-cv-00220, 2026 WL 2056451, *5 (D. Vt. July 16, 2026) (noting that Second Circuit precedent supports use of current rather than historical rates in calculating the fee award to compensate for the delay in payment).

District Court overrode its own findings signifying that a higher award was warranted because it believed it was "constrained" by legal precedent. (SPA-36.)

Dr. Porter was awarded attorney's fees following the jury verdict in her favor on the Vermont Fair Employment Practices Act ("VFEPA") disability discrimination claim. Consequently, Vermont law governs the fee and interest decisions in this cross appeal. *See, e.g., Cole v. Foxmar, Inc.*, 160 F.4th 28, 32 (2d Cir. 2025) (explaining that where a Vermont statute creates the "substantive right" to attorney's fees, Vermont law governs the method for calculating the fee award); *Rhodes v. Davis*, 628 F. App'x 787, 792 (2d Cir. 2015) (noting that the question of prejudgment interest is one of substantive law and state law applies where plaintiff did not prevail on federal claims); *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011) ("[W]here prejudgment interest can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate.").

Dartmouth Health casts the District Court's decisions as fully discretionary and urges this Court not to "second guess" or "micromanage." (Dartmouth Health Resp. 42.) With respect to the District Court's interpretation and application of the facts, Dartmouth Health is correct. Inexplicably, however, Dartmouth Health takes issue with Dr. Porter's citation of *Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019), for the proposition that "questions of law regarding the legal standard for granting or denying attorney's fees" are reviewed *de novo*. (Dartmouth Health

Resp. 43.) Yet this is precisely what *Lilly* states. *See also Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1034–35 (3d Cir. 1996) (The "standard[] to apply in calculating an award of attorneys' fees is a legal question" subject to *de novo* review.). Regardless, even if reviewed for abuse of discretion, it is blackletter law that "[a] district court abuses its discretion if it … bases its decision on an error of law or uses the wrong legal standard." *Lilly*, 934 F.3d at 227. *See also Spooner v. Town of Topsham*, 2010 VT 71, ¶ 7, 188 Vt. 293, 9 A.3d 672 (finding abuse of discretion in trial court's error of law "misinterpret[ing] various aspects of Vermont's lodestar analysis for calculating reasonable attorney's fees" under VFEPA); *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998) (A fee ruling premised on an error of law is *per se* an abuse of discretion.); *Cole*, 160 F.4th at 32 (noting that the court abuses its discretion when its "decision rests on an error of law (such as application of the wrong legal principle)").

Dr. Porter's cross-appeal should be granted because these decisions were not required by existing law, were founded on misinterpretations of legal precedent, and are not reflective of the public policies behind the civil rights laws. Specifically, the District Court's award of attorney's fees should be recalculated at the higher rates requested and without the 10% reduction. In addition, the judgment should be amended to include either prejudgment interest on the attorney's fees incurred and paid by Dr. Porter prior to August 2020 or,

alternatively, to recalculate the total award using current rates, to compensate for the lengthy delay.

## ARGUMENT

### I. DR. PORTER MADE A *PRIMA FACIE* SHOWING OF REASONABLENESS, AND DARTMOUTH HEALTH DID NOT CHALLENGE IT

Dr. Porter was awarded attorney's fees following the jury verdict in her favor on her state law disability discrimination claim under VFEPA. The District Court agreed that Vermont law governs the award of attorney's fees. (A-1639.) *See also Cole*, 160 F.4th at 32 (explaining that Vermont law governs when the "substantive right" to attorney's fees comes from a Vermont statute). A prevailing party under VFEPA is entitled to seek "reasonable attorney's fees." 21 Vt. Stat. Ann. § 495b(b). A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

Vermont and the Second Circuit employ similar, but not identical, standards to determine a presumptively reasonable fee award. *See, e.g.*, *Cole*, 2026 WL 2056451 at *3 n.1 (noting that Vermont uses the term "lodestar" and the Second Circuit uses the term "presumptively reasonable fee," but both terms effectively mean the same thing). One practical difference is that the Second Circuit's

framework emphasizes what a reasonable paying client would be willing to pay as the primary lens for determining the reasonable rate, *see Lily*, 934 F.3d at 230 (discussing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Alban*y, 522 F.3d 182 (2d Cir. 2008) and subsequent cases), while Vermont courts use a broader reasonableness touchstone without anchoring the analysis to the hypothetical paying client, *see Spooner*, 2010 VT 71 at ¶¶ 9 & 14 (noting Vermont courts base their analysis on "reasonableness" under all of the circumstances, distinguishing *Arbor Hill*'s "reasonable paying client" standard, and rejecting use of that standard "as the sole basis for denying attorney's fees"). Under Vermont law, a fee award in cases based on fee-shifting civil rights statutes such as VFEPA should not be limited by what a "reasonable paying client" would be willing to pay. *See Cole*, 160 F.4th at 34–35 (explaining that doing so would "undercut" the purpose of civil rights fee-shifting statutes which are by nature designed to facilitate access to attorneys for people whose claims may be worth less than the representation costs).

The lodestar "represents the reasonable worth of the services rendered" and promotes "the statute's goal of alleviating the cost of litigation for prevailing claimants." *Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*, 2006 VT 123, ¶17, 181 Vt. 45, 915 A.2d 750 (internal quotations omitted). The lodestar is found by multiplying a reasonable hourly rate by a reasonable number of hours expended.

After calculating the lodestar, the award may be adjusted up or down depending on other relevant factors. *Cole*, 160 F.4th at 32–33. *See also Perdue*, 559 U.S. at 554–56 (discussing situations where fee enhancement may be appropriate, including where "the litigation is exceptionally protracted" or an "exceptional delay in the payment of fees").

A. Counsel for Dr. Porter provided uncontested evidence that their requested rates were reasonable and customary for the area.

Two of Dr. Porter's attorneys (Geoffrey Vitt and Eric Jones) submitted affidavits asserting that the rates requested are within the range of usual and customary rates charged by Vermont attorneys. (A-978, A-980, A-982.) Case law confirms that the requested rates are within the range of rates found reasonable in Vermont, and copies of invoices demonstrated the rates actually paid by Dr. Porter through August 2020. Both attorneys have extensive employment litigation experience in Vermont. (A-973, A-981 to A-982.) In particular, Attorney Jones has experience in several Vermont firms, including Downs Rachlin Martin (another Burlington-area firm and the firm representing Dartmouth Health as Vermont local counsel in this case), and corresponding knowledge of the market rates in the area. Dr. Porter made an appropriate *prima facie* showing of reasonableness that was not challenged by Dartmouth Health.

It is telling that even the Dartmouth Health defendants, who contested *nearly everything* over 8+ years, *did not contest* the reasonableness of the requested rates.[2] (SPA-36; A-1649.) If they had, Dr. Porter could have and would have submitted additional evidence in support. This practice of proceeding on counsel affidavits absent a challenge is common in the jurisdiction. *Cf. Bank of Am., N.A. v. New England Quality Serv., Inc.*, 790 Fed. App'x. 314, 321 (2d Cir. 2019) (rejecting Appellants "assert[ion] that Vermont law requires a court to receive expert or independent testimony when awarding fees"). Although the party seeking fees bears the burden to show reasonableness, where the opposing party does not submit evidence in opposition or otherwise contest reasonableness, the necessary showing should be minimal. *See Perez*, 2006 VT 123 at ¶¶ 14–15 (adopting plaintiff's requested rates where defendants did not challenge or provide counter evidence); *Makinen v. City of New York*, No. 111CV07535ALCAJP, 2016 WL 1451543, at *3 (S.D.N.Y. Apr. 12, 2016) (adopting billing rate proposed by plaintiff where defendants did not challenge the reasonableness of the rate and "the Court finds no reason to question their reasonableness in light of counsel's

[2] It is likely that one reason Dartmouth Health conceded the reasonableness of the rate charged by Dr. Porter's lawyers is that Dartmouth Health did not want to share the rates it paid its own lawyers. Dartmouth Health was represented by attorneys from a large Boston firm as well as local counsel from Vermont's largest law firm. Dr. Porter has no doubt that Dartmouth Health's Vermont lawyers charged rates equal to or higher than the rates sought by Dr. Porter's fee petition.

experience and prevailing rates”); *Balu v. City of New York*, No. 12 CIV. 1071 (KPF), 2016 WL 884666, at *4–5 (S.D.N.Y. Mar. 8, 2016) (adopting $400 rate proposed by counsel where defendants challenged the hours expended but did not challenge the rate); *Washington*, 89 F.3d at 1036–37 (noting reduction in rate is not appropriate where plaintiff meets *prima facie* burden for reasonableness and defendant does not produce contrary evidence). Because Defendants did not challenge the rate, which was adequately supported by counsel affidavits, invoices, and prior case law, an evidentiary hearing on the reasonableness of the rate or additional affidavits from disinterested counsel would have unnecessarily wasted the court’s time.

The prevailing market rate contemplates a *current* rate. As the District Court noted, “[w]hen considering rates awarded in other cases, the court should increase those rates to account for the passage of time.” (SPA-31.) *See also Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 208–09 (2d Cir. 2005) (cautioning that “‘a reasonable hourly rate’ is not ordinarily ascertained simply by reference to rates awarded in prior cases” and that in reviewing prevailing rates, the Court must be mindful of evidence suggesting that rates have since increased). As noted in *Farbotko*, failure to do so could create a discrepancy in rates and undermine the goal of “attracting competent counsel in public interest litigation.” *Id.*

Although the District Court agreed that rates should rise with time, (SPA-31 to SPA-34; A-1644 to A-1646), and did a survey of rates awarded in various cases, it did not seek to "update" rates in prior cases to account for the passage of time. The District Court in the present case capped the hourly rates at $350 as of 2025. Yet four years prior, the District Court found an hourly rate of $350 reasonable for a partner at the firm of Langrock Sperry & Wool (where Attorneys Eric Jones and Alison Bell are also partners) and "within the range of hourly rates" for an experienced partner in a Vermont firm. (SPA-32 (citing *Sullivan v. Saint-Gobain Performance Plastics Corp.*, Case No. 5:16-cv-125, 2021 WL 1851404, at *2 (D. Vt. May 10, 2021)). The District Court did not discuss how much a $350 hourly rate might reasonably be expected to increase over the course of four years, but experience indicates that it is more than $0. *Cf. Rivard v. Smallheer*, No. 22-CV-04364, 2023 WL 7309300, at *2 (Vt. Super. Oct. 20, 2023), *aff'd by* No. 23-AP-388, 2024 WL 1481590, at *3 (Vt. Apr. 5, 2024) (finding, just two years after *Sullivan*, a $435 hourly rate reasonable for an experienced Vermont attorney in another Vermont case involving a fee-shifting statute). Similarly, the District Court did not consider how much the $435 hourly rate in *Rivard* might reasonably be expected to increase between 2023 and 2025 (although the 2023 *Rivard* rate was already higher than the highest rates requested by Dr. Porter's counsel in 2025).

Despite Dr. Porter's *prima facie* showing and the absence of any objection or rebuttal, the District Court *sua sponte* reduced the hourly rates of plaintiff's counsel. In doing so, the District Court erred.

B. Numerous factors, acknowledged by the District Court, supported higher-than-average rates.

The "prevailing market rate in the community" or "forum rate" is one—but not the only—factor courts may consider in determining a reasonable hourly rate. (A-1644.) *See also Perez*, 2006 VT 123 at ¶¶ 8–14 (citing *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 605 (1986) for the proposition that "there is no fixed standard for determining a reasonable rate" and one of the factors to be considered is the rates charged by other attorneys in the area for similar services); *Polk v. New York State Dept. of Correctional Servs.* 722 F.2d 23, 25 (2d Cir. 1983) (stating that "the rate prevailing in the appropriate community is only one of many factors bearing on the determination of a fee award"). *Cf. Courthouse News Serv.* v. *Gabel*, Case No. 2:21-CV-000132, 2026 WL 1694596 (2d Cir. June 11, 2026) (discussing reasonableness of rates outside the forum rule and consideration of the *Arbor Hill* and *Johnson* factors).

The District Court acknowledged that many factors pointed towards higher rates in the present case, including the extensive experience of trial counsel, the complexity of the case, the number of years the case had been pending, the

contingent fee arrangement, and the customary increase of law firm rates over time. (A-1649.) *See also Courthouse News Serv.*, 2026 WL 1694596 at *5 (listing factors that may impact reasonableness, such as counsel's expertise, the "complexity and difficulty" of the case, the attorney's customary rate, the length and nature of the relationship between counsel and client, and whether the fee is fixed or contingent). Nevertheless, the District Court went against the acknowledged factors supporting higher-than-average rates because it mistakenly believed it was constrained by the "forum rule." (*See* A-1649 (stating, "[a]lthough these factors might warrant somewhat higher than normal hourly rates, the Court is nevertheless constrained by market rates in this District").)

A robust fee award is critical in fee-shifting civil rights cases, which are often fact-intensive, hotly contested, and carry a public benefit well beyond the economic damages incurred by the individual plaintiff. Counsel must often be willing to take such cases on contingency or other delayed payment schedule, at considerable personal risk. The fact-intensive nature of such claims often necessitates significant discovery and lengthy trials, as occurred in the present litigation which has persisted over more than eight years and where trial alone was three weeks plus several months of pre-trial motions and other trial preparation tasks. A reasonable award of attorney's fees serves as a deterrent to potential violators and encourages private citizens and attorneys to pursue violations that

might otherwise have gone unchecked due to the high cost of litigation. The District Court erred when it failed to factor the passage of time into the rates previously approved in similar Vermont cases and compounded the error when it permitted one factor (the forum rule) to control its determination of reasonableness, particularly where other factors and prior case law supported a finding of higher rates. Such a precedent would likely have a chilling effect on the willingness of counsel to accept civil rights cases.[3]

The District Court unreasonably constrained its own exercise of discretion with an incorrect legal standard while indicating that in the absence of such standard, the complexities of the case would justify a higher hourly rate. *Cf. CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 88–89 (2d Cir. 2013) (reversing District Court's 20% across-the-board reduction in fees, finding that the decision was based on an "erroneous belief that a legal principle so required"). Under these circumstances, the District Court should not have reduced counsel's hourly rates.

[3] The District Court noted that a substantial downward adjustment would be inconsistent with the principles behind civil rights cases and could make it difficult for plaintiffs to secure counsel in future cases. (SPA-51 to SPA-52.) At the time Dr. Porter engaged the services of counsel, she was living and working in the Upper Valley. Plaintiff's counsel have represented many Dartmouth Health medical providers over the years in employment disputes. Finding employee-side attorneys in the Upper Valley willing and able to take on cases against Dartmouth Health is already a challenge as many law firms in the area represent employer-side clients only or are otherwise conflicted out of cases against Dartmouth Health.

C. The District Court misconstrued the law and ignored policy when it applied a 10% across-the-board reduction in Dr. Porter's legal fees claiming "somewhat limited success."

Dr. Porter prevailed on the VFEPA claim, achieved a substantial damage award, and was awarded attorney's fees. The District Court rejected Dartmouth Health's characterization of the litigation as "overwhelmingly unsuccessful," noting that "[i]t strains credulity to accept that a Vermont jury awarding over one million dollars to a single plaintiff is not a significant verdict," (SPA-51), but still labeled the result a "somewhat limited success" and applied a 10% across-the-board reduction in fees. This was error.[4]

Although Vermont permits a lodestar adjustment for "litigation results" including "degree of success," an adjustment based on "proportionality" is prohibited. *See Cole*, 160 F.4th at 34–35 (noting that fee-shifting statutes are designed to encourage prosecution of claims with important public interest components where the results are typically disproportionate to the costs to litigate). The court must take care not to allow proportionality to masquerade as "degree of success" by reducing a fee award on the grounds that a plaintiff failed to obtain

[4] By referring to "degree of success" as the "most critical factor," (SPA-52), the District Court arguably elevated the Second Circuit standard over Vermont law. *Cf. Huard v. Henry*, 188 Vt. 540, 545 (2010) (noting that "*among the factors* a trial court may look at in deciding whether to increase or reduce a lodestar amount is the result obtained by the attorney") (emphasis added).

100% of the relief requested. *Id.* Similarly, "courts should not use the value of a plaintiff's damages award as the determinative metric of the plaintiff's degree of success, particularly where, as here, the plaintiff obtained far more than nominal damages under statutes that serve broad public interests and offer an array of remedies." *Cole*, 160 F.4th at 36 (internal quotations and alterations omitted). In the present case, quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009), the District Court stated: "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay." (SPA-28 (internal quotations omitted).) In the context of civil rights claims where the monetary value of the claim may well be worth less than the cost of representation, however, the District Court's use of the "reasonable paying client" standard has been found to "improperly inject[] proportionality into its analysis." *Cole*, 160 F.4th at 36.

Dartmouth Health's reliance on *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008) is misplaced. The "primary aim" of the lawsuit is viewed in light of the requested relief. In *Barfield*, the plaintiff's primary aim was class certification. Where plaintiff failed in achieving that, it was reasonable to conclude limited success and reduction was within the court's discretion. Conversely, the primary aim here was to obtain compensation to help make Dr. Porter whole again following her wrongful termination by Dartmouth Health (whether that was accomplished through a disability claim, whistleblower

claims, or public policy claim). In this, Dr. Porter substantially succeeded—Dr. Porter prevailed on the VFEPA claim and recovered $1,125,000 in damages at trial (out of the $1,787,000 in damages presented to the jury).

The 10% reduction contradicts the District Court's *unappealed* finding that the claims are interrelated. "Dr. Porter's claims are interrelated both factually and legally." (A-1656.) Where "claims are interrelated both factually and legally" and "share a common core of facts and legal issues," as the District Court found here, (SPA-42 to SPA-43; SPA-54), the Court should not impose a reduction for unsuccessful claims, *Raja v. Burns*, 43 F.4th 80, 87–88 (2d Cir. 2022); *Makinen v. City of New York*, No. 111CV07535ALCAJP, 2016 WL 1451543, at *4 (S.D.N.Y. Apr. 12, 2016) (declining to reduce the fee award based on alleged lack of success where successful and unsuccessful claims were "inextricably intertwined" and involved the same "common core of facts"). Yet this is exactly what the District Court did. Moreover, success on additional counts would have resulted in an identical recovery because the measure of damages across her claims is the same and the jury could not duplicate awards. (*See* SPA-54 (noting "[i]t is plausible that the amount of the verdict would have been the same had the jury found in favor of Dr. Porter on any of her other claims instead of the VFEPA claim or in addition to the VFEPA claim). *Cf.* SPA-150 (instructing the jury not to "award damages for

one item that duplicates an award for another item" because "a party is entitled to only one recovery for his or her damages").)

Dartmouth Health's insistence on arguing the outdated $4,000,000 damages estimate rather than the one that was actually presented at trial is, at best, disingenuous. By the time of trial, a number of years after the initial estimate of damages, the damages presented to the jury were less than half of that amount (due to Dr. Porter's dedication to her profession and better-than-expected ability to mitigate her damages). Thus, Dr. Porter's recovery of $1,125,000 out of the $1,787,722 figure presented to the jury is far more significant than the 25% recovery alleged by Dartmouth Health.[5]

## II. DR. PORTER SHOULD HAVE BEEN COMPENSATED IN THE FEE AWARD FOR DELAY

Fee-shifting statutes such as VFEPA shift the reasonable costs of litigation from the plaintiff to the party that caused the harm. Dr. Porter's employment with Dartmouth Health was terminated in 2017, now more than nine years ago. Through August 2020, Dr. Porter was invoiced for, and paid, legal fees on an

[5] Dartmouth Health's argument essentially seeks to penalize Dr. Porter for successfully reducing her anticipated damages by more than half through her own mitigation efforts in the years between the initial estimate and trial. Allowing Dartmouth Health's argument would create bad precedent and be contrary to public policy.

hourly basis. Later, Dr. Porter and counsel agreed to a contingency arrangement for services rendered after August 2020. Dr. Porter has thus been deprived of the value of the money she paid out of pocket for attorney's fees for as many as nine years. Similarly, Dr. Porter's counsel has diligently represented Dr. Porter without upfront compensation for as many as six years. As the Supreme Court has noted, "compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). To fulfill the "make whole" purpose when litigation drags on for years, the fee award must account for the impact of delay. *See, e.g., Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*, 942 F.3d 106, 110-111 (2d Cir. 2019) (stating that where prejudgment interest is not awarded on reasonably ascertainable damages, plaintiffs are not "made whole"). This might be done by applying the current rates rather than historical rates when calculating the fee award or by awarding prejudgment interest. The District Court did neither.

A. Prejudgment interest at the statutory rate of 12% should have been awarded.

Vermont policy provides that "plaintiffs are not fully compensated unless they can recover the interest." *Id.* The fee request applied historic rates and requested prejudgment interest on the portion of fees already invoiced and paid by

Dr. Porter to compensate for the delay in payment. (A-964.) The District Court erred in denying Dr. Porter's request under Vermont law for prejudgment interest on the portion of attorney's fees that Dr. Porter had paid out-of-pocket through August 2020.[6] Vermont makes interest available *as of right* when the sum is liquidated and readily ascertainable, and discretionary otherwise. *New England P'Ship, Inc. v. Rutland City Sch. Dist.*, No. 2002-476, 2003 WL 25745409, at *4 (Vt. June 1, 2003). *See also* Vt. R. Civ. P. 54(a) (stating prejudgment interest "shall" be included … when the amount of damages is readily ascertainable).

The District Court denied the request on the grounds that attorney's fees are generally not "liquidated" until after trial. (A-1673.) In one sense, this is true of most categories of damages, where the time period for compensation may be limited, or offsets or other reductions to the full value might be applied, such that the precise amount of damages is not determined (or "liquidated") until after trial. As one Florida court explained in an action involving contractual indemnity, approving prejudgment interest on attorney's fees awarded as damages in a related lawsuit:

> It is well-settled that prejudgment interest is due as a matter of law when a verdict liquidates the pecuniary losses suffered by the plaintiff. The purpose of the award of prejudgment interest is to make the plaintiff whole from the date of loss once the jury determines the defendant's

[6] For services performed after August 2020, Dr. Porter and counsel agreed to a contingency arrangement.

> liability for damages and their amount. Once the jury sets the amount of damages to be awarded, the damages are retroactively considered liquidated damages, and the plaintiff is entitled to prejudgment interest back to the date that the damages were due.

*Capitol Env't Servs., Inc. v. Earth Tech., Inc.*, 25 So. 3d 593 (Fla. Dist. Ct. App. 2009). *See also Stewart Title Guar. Co. v. Tilden*, 181 F.3d 94, 103–04 (Wyo. 2008) (noting, "it is not true that the attorney's fees owed at any given time could not be readily computed by basic mathematical calculation" because the party could have asked the opposing party for the billing records at any time and known the amount of fees that had accrued); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 361, 368 (D. Mass. 1993), *aff'd and remanded*, 36 F.3d 1147 (1st Cir. 1994) (recognizing discretion of district court to award prejudgment interest on attorney's fees in a civil rights case to compensate for delay). As the Vermont Supreme Court acknowledged in *Vastano v. Killington Valley Real Est.*, 2010 VT 12 ¶ 10, 187 Vt. 628, 996 A.2d 170, cited by the District Court in the present case, (A-1673), "there may be circumstances where attorney's fees are subject to ready determination" for purposes of awarding prejudgment interest. The pre-August 2020 fees were not hypothetical or abstract—$475,096 represents actual legal fees that Dr. Porter paid out of pocket that she would not have had to pay but for Dartmouth Health's unlawful decision

to terminate her employment—in that sense, they are more akin to back pay or other historical economic damages.

The Court should award prejudgment interest on the attorney's fees that she paid prior to August 2020 because the expense was known, the amount was readily ascertainable, Dr. Porter has been deprived of a substantial amount of money for years, and doing so fulfills the public policy behind civil rights remedies of making the plaintiff whole. As the District Court determined, any award of prejudgment interest should be at the Vermont statutory rate of 12%. (SPA-13 to SPA 14.) *See also Thomas v. iStar Fin., Inc.*, 652 F.3d at 150 n.7 ("[W]here prejudgment interest can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate.").

B. Alternatively, the fee award should have been calculated at current hourly rates.

The District Court should have calculated the fee award using current rates, particularly in light of its decision to deny prejudgment interest on the fee award.[7]

---

[7] To the extent that Dartmouth Health argues that Dr. Porter "forfeited" the "new assertion" that counsel's historical rates should be increased to current rates, it is mistaken. Throughout this case, Dr. Porter and her counsel have raised as an issue the additional harm that arises when payment for damages incurred is significantly delayed and asked that judgment reflect the value of this additional harm. Although this most often was expressed in terms of a request for an award of prejudgment interest, including on attorney's fees, it was clear to the District Court and Dartmouth Health that any award should include compensation for the lost

*See Balu*, 2016 WL 884666 at *4–5 ("The rates used by the court should be current rather than historic hourly rates."). (*See also* A-963 (stating invoices reflecting historical rates should be awarded prejudgment interest).) Increasing historical rates to current rates is one way that courts address delay in civil rights cases, which by nature often involve an extended period of time between initiating the case and obtaining payment. *See, e.g., Cole*, 2026 WL 2056451 at *5 (applying current rate to all hours in fee award); *Perdue*, 559 U.S. at 556 (Compensation for delay in payment in civil rights cases is often by "basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."); *LeBlanc-Sternberg*, 143 F.3d at 764 (current rather than historical rates should be applied to compensate for delay in payment); *Missouri*, 491 U.S. at 283 (recognizing the impact of delay in civil rights fee-shifting cases and noting that "[o]ur cases have repeatedly stressed that attorney's fees awarded under [§ 1988]

---

time-value of money. In addition, Supreme Court and Second Circuit precedent have expressed the current rate adjustment in "should" rather than "could" terms, indicating an intent that the adjustment is expected (except when primary responsibility for delay is the fault of the party seeking fees). *See Cole*, 2026 WL 2056451 at *5. And finally, *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000), which Dartmouth Health cites for the proposition that arguments may not be raised first on appeal, recognizes that the Court retains discretion to consider arguments not raised below. *See id.* (noting that the rule "is one of prudence and not appellate jurisdiction" and that they "retain broad discretion to consider issues not raised initially in the District Court" and choosing to reach the merits because the argument presented "a pure question of law").

are to be based on market rates for the services rendered”). This is particularly important where, as here, a case has continued over many years. *See Perdue*, 559 U.S. at 554–56 (discussing situations where fee enhancement may be appropriate, including where “the litigation is exceptionally protracted” or an “exceptional delay in the payment of fees”); *Missouri*, 491 U.S. at 283 n.6 (describing hardship suffered by attorney who was precluded from engaging in other work due to the demands of the case for an extended period and had to borrow money to meet operating expenses and again to make interest payments on the loan).

## CONCLUSION

For the reasons stated in this Reply, the Court should grant Dr. Porter’s appeal and recalculate the attorney’s fee award using increased rates and without the 10% reduction. In addition, the Court should award prejudgment interest on that portion of attorney’s fees incurred and paid by Dr. Porter through August 2020.

Dated: September 4, 2026

Respectfully Submitted,

*/s/ Geoffrey J. Vitt*

SARAH NUNAN
GEOFFREY J. VITT
VITT & NUNAN, PLC
8 Beaver Meadow Road
P.O. Box 1229
Norwich, Vermont 05055
(802) 649-5700

– and –

ERIC D. JONES
LANGROCK SPERRY & WOOL, LLP
210 College Street, Suite 400
Burlington, Vermont 05401
(802) 864-0217

*Attorneys for*
*Plaintiff-Appellee-Cross-Appellant*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and, exclusive of the exempted portions of the brief as provided by Rule 32(f), contains 5,431 words and thus is in compliance with the type-volume limitation set forth in Rules 28.1(e)(2)(C) and 32(a)(5)(A) of the Federal Rules of Appellate Procedure and Local Rule 28.1.1(b). The undersigned has relied upon the word-count feature of Microsoft Word in preparing this Certificate, as permitted by Rule 32(g)(1) of the Federal Rules of Appellate Procedure.

Dated: September 4, 2026

*/s/* Geoffrey J. Vitt

*Attorney for*
*Plaintiff-Appellee-Cross-Appellant*